## J. T. R. JOUETT v. W. T. GUNN.

### No. 898.

.1.  **Trust Deed—Power of Sale—Maturity of Debt.**

Where a trust deed provided that in the event any three installments of interest on the note secured by it were due and [unpaid, the whole debt should be due, and that in case of default in payment of such indebtedness, principal and interest, at maturity, the trustee might sell, he was empowered to sell when there were three interest installments overdue, although they were so overdue at the time the trust deed was executed,—it appearing that the note with the provision as to the three installments was copied in full in the trust deed.

2.  **Same—Request to Sell.**

Where a note and trust deed provided that the trustee should at the request of the beneficiary, made at any time after the maturity of the indebtedness, proceed to sell, the fact that the beneficiary owned the note when it was given to the trustee for collection sufficiently shows that he requested the sale.

3.  **Disqualification of Judge—Consent Decree.**

Where a judge is disqualified under the Constitution, by reason of having been of counsel in the case, his orders in appointing commissioners and entering a decree of partition are void, though made by consent of the parties.

4.  **Evidence—Ancient Deed.**

A deed which comes from the proper custody, is free from suspicion, and purports to be more than thirty years old, is admissible in evidence as an ancient instrument.

ERROR from Collin.  Tried below before Hon. J. E. DILLARD.

*M. H. Garnett* and *E. F. Brown*, for plaintiff in error.—1.  The terms of a trust deed are strictly construed, and unless the power therein conferred is followed, the title to the land does not pass by the sale. Ferguson v. Reed, 45 Texas, 582; Frost v. Erath Cattle Co., 81 Texas, 509; Collins v. Durward, 4 Texas Civ. App., 341.

2.  The sale of the land under the deed of trust before the maturity of the deed passed no title and the deed made under the trust deed by the trustee is a nullity.  Ferguson v. Reed, 45 Texas, 582.

3.  More than three payments being due on the note which provided on it face that in case three installments of interest shall become due and unpaid the whole debt shall be due, said note not yet due on its face will be taken as a waiver of the provision for it to become due upon the happening of certain things, and the sale of the land under it prior to the time it falls due on its face will not pass the title.  Bomar v. West, 28 S. W. Rep., 519.

*Burdett & Conner* and *Smith & Evans*, for defendant in error.—1. The deed of trust from James N. McBath to E. S. Connor, and the deed from E. S. Connor, trustee, to W. T. Gunn passed all the title of the said McBath to W. T. Gunn.

2.  The judgment and decree appointing the commissioners and approving their report of partition, is void, because made by W. S. Todd, one of the counsel in said cause.  Constitution 1845, art. 4, sec. 14, p. 199, 4 Sayles' Texas Stats.; Andrews v. Beck, 23 Texas, 455; Slaven v.

Wheeler, 58 Texas, 23; Newcome v. Light, 58 Texas, 141; Chambers v. Hodges, 23 Texas, 104.

JAMES, CHIEF JUSTICE.—Trespass to try title brought by Gunn against J. T. R. Jouett and others, Jouett alone suing out the writ of error. The facts, so far as they are material to the conclusions of law we have reached, are as follows:

The survey of which the land sued for is a part, was patented in February, 1845, to Thomas Jouett as his headright. There was a deed from Thomas Jouett (his wife, whose signature was not necessary, joining) to Vincent B. Timms, dated January 22, 1846. The plaintiff Gunn holds under this conveyance, and if the sale under a deed of trust discussed in our conclusions of law, was valid, his chain of title under Thomas Jouett is complete.

It appears that Thomas Jouett and his brother, John G. Jouett, had been partners in reference to merchandise and land certificates, and a bill in chancery seems to have been brought in 1842 by Thomas Jouett against John G. Jouett for some purpose not shown by the record. This proceeding was numbered on the docket of the District Court of Fannin County, 124. On March 6, 1844, death of defendant was suggested and scire facias was ordered to make his representatives parties. On February 26, 1845, the order was renewed. The last order, clearly identified as in the suit No. 124, was on September 6, 1845, which was as follows: "This day came the parties by their respective attorneys, and on motion of defendant the plaintiff was ruled to security for costs in sixty days, if not, the case dismissed."

On January 30, 1846, Thomas Jouett filed in the same court an original bill in equity against the representatives of John G. Jouett, among them plaintiff in error and others, setting forth, among other things, that in 1836 he and his brother, John G. Jouett, had entered into a partnership in the purchase and sale of merchandise and land certificates, to continue for five years; that at the end of the five years, they had a written settlement of their affairs, which writing, instead of being recorded, as contemplated, was taken or kept or destroyed by John G. Jouett. The bill alleged the substance of the writing, and among other things disclosed that the respective headrights of the parties were partnership property, and prayed to have petitioner's rights decreed in accordance with the terms of the agreement. This bill does not refer to previous proceedings, and contains the first mention of the survey in question. The filing of this bill was after the conveyance by Thomas Jouett to Timms.

On November 13, 1846, a rule for costs was granted in a cause No. 315, of Thomas Jouett v. John G. Jouett's heirs and others.

On November 18, 1846, in the case of Thomas Jouett v. John G. Jouett's heirs et al., a final decree was entered, showing a demurrer was sustained to the bill, and decreeing that defendants go hence without day and recover costs, and notice of appeal. This order is not identified

by number, and as cause No. 315 was on the docket for years afterwards, it probably referred to cause No. 124.

Orders were entered in No. 315 down to 1855, when a decree of partition was entered which allotted to the heirs of John G. Jouett the headright of Thomas Jouett. In this cause No. 315, the district judge was disqualified by reason of his having been of counsel in the case, and James B. Davis, Esq., qualified as special judge. The disqualification of the judge to try such cause, and the selection and qualification of the special judge, clearly appear in the minutes of that proceeding by entries of April 30, 1852, and May 12, 1854. On May 12, 1854, the special judge entered a consent decree of partition, appointing commissioners, their report to be returned at the next term, and such report to be a final decree. The commissioners named refused to act, and a supplemental order was entered on November 11, 1854, appointing others, also upon agreement of the parties, as the order states. This order was made by the disqualified district judge. On May 11, 1855, a report of the commissioners was approved and made the decree of the court by the disqualified judge.

It appears that afterwards, in 1871, a decree of partition was made in the District Court of Fannin County in a suit between the sole heirs of John G. Jouett, to-wit, John T. R. Jouett and James R. Lightfoot, in which was partitioned certain lands, and in this decree one-half of the Thomas Jouett headright was allotted to Lightfoot, and the other half (covering the land in question) to plaintiff in error.

*Opinion.*—The signature of the wife to the deed from Thomas Jouett to Timms was unnecessary to convey the land. The acknowledgments were also immaterial for that purpose. It was shown that the instrument came from a proper custody, and was free from suspicion, and purported to be more than thirty years of age. This, under repeated rulings in this State, authorized its introduction. See review of the cases on this subject in Chamberlain v. Showalter, 23 S. W. Rep., 1017. The chain of title from and under Timms shows that the deed has been repeatedly acted upon.

The second and third assignments question the sufficiency of a sale under a deed of trust to invest plaintiff with title. The deed to plaintiff was from a trustee, upon a sale of the land under a deed of trust given by one McBath to E. S. Connor, trustee, dated in April, 1890. This deed of trust was given to secure a note dated April 24, 1890, signed by McBath and others, in the sum of $2,500, payable April 24, 1895, with ten per cent interest, payable in semi-annual installments. It provided that in the event any three interest installments should be due and unpaid, the whole debt should be due; also, that in case of default in payment of said indebtedness, principal and interest, at the maturity of same, then the trustee should, at the request of the beneficiary, made at any time after the maturity of the indebtedness, sell, etc.

The sale was advertised after December 1, 1892, and made in Janu-

ary, 1893. It was proved by the testimony of the trustee that nothing had been paid on the note; that Aiken, the original payee, owned the note at the time of the sale, and that the note was placed in his hands for collection before the advertisement.

The points made by counsel against the trustee's sale are, that it appears the trustee had no power to sell because the debt was not due, and because he could sell only after the debt, principal and interest, became due, which was not until 1895, and then only at the request to do so by Aiken; and that it appears that the sale was made before any advertisement had been made.

We are of opinion that the power could have been executed after the default shown in reference to the interest, there being more than three installments overdue. The note was then matured in the sense of the provisions of the deed of trust. That Aiken, the beneficiary, requested a sale made is necessarily involved in the fact that he still owned the note when it was given to the trustee for collection. There is no evidence that the advertisement was made in any particular manner, but no question is presented in reference to this. The testimony of the trustee would show that advertisement was made before sale, hence the objection last mentioned in the above paragraph is without force. The trustee's deed was properly admitted.

As the above disposes of the objections made to defendant in error's evidence of title, we conclude that he proved a title in plaintiff under the original grantee.

Another point made is, that the evidence discloses that Timms bought from Thomas Jouett during the pendency of litigation between the latter and John G. Jouett or his heirs, involving the title to the survey. We may dispose of this question by saying that the record does not disclose any proceeding involving this tract until the bill which was filed, eight days after the deed to Timms. The purpose and scope of the previous proceedings are not indicated. For this reason, Timms could not be held to be affected in his title by the doctrine of lis pendens.

The bill filed January 30, 1846, appears to have led to a decree in 1855 adjudicating to the heirs of John G. Jouett the Thomas Jouett headright. There are several questions made which depend upon this decree being a valid one, which, if the decree be not valid, need not be noticed. The court, among other reasons, held this decree to be void because the record of that cause shows that the judge appointing the commissioners of partition and causing their report to be entered as the decree in the suit, had been of counsel in the cause, and for that reason disqualified under the provisions of the Constitution.

In this view we concur. On April 30, 1852, the minutes show that the district judge refused to make an order in the case because he had been of counsel in the cause and was disqualified. On May 12, 1854, they show that, for the above reason, James B. Davis, Esq., was agreed on and qualified as special judge to try the cause, on which date he entered a consent decree of partition naming certain persons as commis-

sioners, which decree concluded with the clause ordering the said commissioners "to make their return at the next term, and said report be made a final decree herein." On November 11, 1854, an order was made and entered by the district judge (disqualified), reciting that "the commissioners appointed at the last term having declined to act, it is agreed by the parties that (naming five others) be and are hereby substituted in their stead to make said partition and to report at the next term of this court."

On May 11, 1855, the minutes show a report by these commissioners entered in the form of a final decree in the cause, which was approved by the district judge (disqualified) and entered by him.

It has been uniformly held in this State that the acts of a judge in a cause where he is subject to any of the disqualifications mentioned in the Constitution, are void. Chambers v. Hodges, 23 Texas, 104; Newcome v. Light, 58 Texas, 141; Templeton v. Giddings, 12 S. W. Rep., 851; Andrews v. Beck, 23 Texas, 455; Burks v. Bennett, 62 Texas, 277; Gains v. Barr, 60 Texas, 676. We think the disqualification extends even to consent decrees. See cases cited in Chambers v. Hodges, 23 Texas, 113. Had the original commission acted and reported, we know from the order made by the special judge that there was an agreement that their report should be entered as the decree. It would not be the decree, however, until made such by the act of the judge. His act in making it the judgment would be the adjudication and we fail to see if his acts (that is, of a disqualified judge) are deemed coram non judice, why the rendering of a consent decree by him should be regarded differently from any other disposition of the case.

It cannot be denied that he had no power to appoint other commissioners. If we look for the consent of the parties to the appointment of the new commission, we find no evidence of it except in an order made by the disqualified judge, and we think he did not have the power to adjudicate the existence of such agreement.

If there be any order that such judge may cause to be entered, they must be such as are merely formal, and not in any way affecting the merits of the case. The decree was of no effect, and was not evidence of title in plaintiff in error. It is possible, in the case of such a decree, that the acts of the parties under it might place them in a position of estoppel to deny its effect as fixing their rights, but there are no circumstances in this record which would warrant such a conclusion, and it is not contended that there are.

Upon these views the plaintiff's title should prevail, and the judgment is affirmed.

*Affirmed.*

Delivered March 18, 1896.

### ON REHEARING.

JAMES, CHIEF JUSTICE.—We think the only reasonable inference is that the suits Nos. 124 and 315, were separate and distinct causes. In

addition to the difference in numbers, the bill filed January 30, 1846, was upon its face an original proceeding. It also asked that the widow and children of John G. Jouett be made parties. As they appear to have been cited in No. 124 (at least the widow appears to have been), this is not consistent with it being a pleading in the old suit. However this may have been, it is clear that there is nothing that shows that this tract was drawn into controversy until the filing of the bill on January 30, 1846.

Upon the second subject mentioned in the motion, we simply held that the decree partitioning the lands was invalid for the reasons given. As between the parties to that proceeding, the original order made by the special judge was valid, but the subsequent proceedings were void. The order of partition was a consent adjudication between the parties that they were equal owners of certain lands, among them the headright of Thomas Jouett. But before the proceeding was instituted, Thomas Jouett had sold this survey to Timms, and vested in him the legal title, and upon the evidence in this record the plaintiff's claim consisted merely of what was adjudicated in the order of partition, which standing alone is of no effect against the conveyance to Timms.

The only theory upon which plaintiff could base a superior right would be that of innocent purchaser for value, and it would not be possible to admit such claim, unless we give effect to the partition, which we hold to be void for reasons already stated. Even then, it would have devolved on plaintiff to establish such equity as would prevail over the legal title, and it is doubtful if any facts exist in this record sufficient to lead to that result.

It is also insisted that the sale by the trustee was premature and void, because the note was given April 24, 1890, and the deed of trust February 5, 1892, when three installments of interest were in default, and therefore this must be taken as a waiver of the provision in the note for its maturity on default of three interest installments, and that the effect of taking of the deed of trust under such circumstances rendered it incapable of being executed until April 24, 1895. Applicant places this contention particularly upon the fact that the deed of trust is silent as to the provision for earlier maturity of the note. The record does not bear this out. The statement of facts may be said not to show distinctly that the deed of trust mentioned this clause, but the bill of exceptions taken to the admission of the trustee's deed, on this very ground, sets out the deed of trust in hæc verba, and it is shown to recite that the note in reference to which it was given, was due on the 24th day of April, 1895, and that it was expressly provided in said note that in the event of any three installments of interest shall be due and unpaid, then the whole debt shall become due.

These cover all the points raised in the motion for rehearing.

We see no good reason to change our opinion, and therefore overrule the motion.

Delivered April 15, 1896. *Overruled.*