# Richmond

E. J. Wills, Special Receiver v. Chesapeake Western Railway Company.

October 13, 1941.

Record No. 2397.

Present, All the Justices.

The opinion states the case.

*John V. Bauserman* and *George S. Harnsberger,* for the appellant.

*Wharton & Aldhizer* and *Conrad & Conrad,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

E. J. Wills, as special receiver in the chancery cause of *D. M. Wine's Administrator* v. *John H. Wine and others,* pending in the ·Circuit Court of ·Shenandoah county, pursuant to the authority and direction of the court in which he was appointed, filed a bill in the court below against O. M. Masters and wife, Chesapeake Western Railway Company, Edward C. Martz and Glenn W. Ruebush, executors of the estate of John W. Morrison, deceased, Minnie A. Long and J. T. Long, alleging that by deed dated May 8, 1930, Minnie A. Long and J. T. Long had conveyed to John W. Morrison, trustee, among others, a tract of 292 acres of mountain land in Rockingham county to secure the payment of a bond in the principal sum of $900, with interest, signed by the Longs and payable to E. J. Wills, special receiver, one year after date; that the deed of trust contained a provision authorizing the trustee, upon default in the payment of the bond and "upon the *requisition* of the beneficiary, his personal representatives or assigns," to sell the property in accordance with the provisions of Code, §5167; that on December 16, 1933, the trustee, without the "requisition," request or authority of the plaintiff, had sold the 292 acres of land at public auction for cash to O. M. Masters, the highest bidder; that while the trustee had collected the purchase price for the property and delivered to Masters a deed therefor, he (the trustee) had misappropriated the proceeds of the sale and had applied no part thereof toward the payment of the bond held by the receiver, and had subsequently died; that on January 29, 1934, Masters and wife had conveyed the property to the Chesapeake Western Railway Company; and that by reason of the unauthorized sale by the trustee, the deed from him to Masters and that from Masters

and wife to the Chesapeake Western Railway Company were void and of no effect.

The prayer of the bill was that the deed from the trustee to Masters and that from Masters to Chesapeake Western Railway Company be set aside and that the land be sold and the proceeds applied to the payment of the debt due to and held by the plaintiff receiver.

Answers were filed by Masters, the Chesapeake Western Railway Company, and the executors of the deceased trustee, each of which denied that the property had been sold without the authority of Wills, receiver, the deed of trust creditor. In addition to this, both Masters and the Chesapeake Western Railway Company claimed that they were *bona fide* purchasers for value and had by their respective deeds acquired good title to the property.

Upon consideration of the evidence taken by depositions, the trial court entered a decree refusing to set aside the deeds complained of and from this decree Wills, the receiver, has appealed.

The record discloses these material facts: John W. Morrison was a prominent attorney of Harrisonburg, Virginia, whose principal business was that of lending money secured by liens on real estate. Among his clients, for whom he had made investments of this character, was his close personal friend, Dr. E. J. Wills, a veterinarian, who likewise lived in Harrisonburg. Early in May, 1930, Morrison stated to Dr. Wills that he had a client who desired to borrow about $1,000, which would be amply secured by a first lien deed of trust on real estate. Dr. Wills agreed to make the loan. He was not acquainted either with the proposed borrower, Minnie A. Long, or the property on which the loan was to be secured, but relied entirely upon Morrison's judgment as to the sufficiency of the security and reliability of the borrower.

On May 8, 1930, Dr. Wills delivered to Morrison a check payable to the latter in the sum of $900, and in

return received from him a bond in that amount, bearing that date, signed by Minnie A. Long and J. T. Long, her husband, payable one year after date, with interest, to the order of Dr. Wills, as receiver, and reciting that it was secured by deed of trust of even date to Morrison as trustee.

No attempt was made to collect the bond at maturity. No interest was paid until February, 1934, when the commissioner of accounts refused to approve the receiver's account while the interest was in default. The receiver then called the matter to the attention of Morrison who gave his personal check for the amount of interest due. Thereafter, in June, 1935, May, 1936, and July, 1937, Morrison made further payments of interest to Dr. Wills, in each instance giving his personal check therefor.

In October, 1937, Morrison committed suicide and shortly thereafter it developed that the deed of trust had been foreclosed and the property sold in December, 1933, that Morrison had filed no trustee's account of the sale and had misappropriated the proceeds.

While both the trustee's advertisement and the deed to the purchaser recited that the sale was made upon the request of the beneficiary in the deed of trust, Dr. Wills testified that this recital was not true.

At the sale both Masters and the Chesapeake Western Railway Company bid on the property. Masters being the highest bidder the property was knocked down to him at $1,315, which was paid in full. An account of the sale was made up by the trustee and was introduced as one of the exhibits in the court below. Although it was not filed with the commissioner of accounts, it shows that the property brought a sufficient amount to discharge in full the debt due the receiver.

The record further shows that Masters and wife conveyed the property to the Chesapeake Western Railway Company for the sum of $1,315 in cash plus the right to Masters to remove certain timber therefrom.

■ It is settled in this State that, "The rule of *caveat emptor* applies with full force to sales made under deeds of trust to secure creditors. The deed is the chart by which the trustee is to be governed. He is a special agent with designated powers, and a purchaser at a sale made by him takes upon himself the risk not only of the fairness of the sale, but of the regularity thereof, and of his compliance with all the substantial requirements of the instrument under which he acts. Such purchaser is chargeable with notice of the extent and limitation of the trustee's powers." *Smith* v. *Woodward*, 122 Va. 356, 368, 94 S. E. 916, and authorities there cited.

■ It is equally well settled in Virginia that an irregular sale by a trustee is not a nullity, and that a purchaser at such a sale who has paid his money and obtained a deed from the trustee acquires legal title which will be upheld in a court of law but which may be set aside in a court of equity. *Smith* v. *Woodward, supra* (122 Va., at pages 369, 370), citing previous holdings of this court.

■ It is also true that where the deed of trust authorizes the trustee to sell the property upon the request of the beneficiary or creditor therein secured, such request is a condition precedent of the trustee's right to sell, and in the absence of such request the sale may be set aside in a court of equity. *Wasserman* v. *Metzger*, 105 Va. 744, 54 S. E. 893, 7 L. R. A. (N. S.) 1019.

■ But the trustee need not have the express request of the beneficiary or creditor in order to make a valid sale of the property. The request may be implied. *Jouett* v. *Gunn*, 13 Tex. Civ. App. 84, 35 S. W. 194.

■ In the case before us we think the record unquestionably shows that the sale by the trustee was upon the implied request and authority of Dr. Wills, receiver, the beneficiary secured in the deed of trust.

Dr. Wills, as has been said, had made other loans through Morrison. His own testimony is that in each instance, including the matter here involved, he relied

upon Morrison as to the value of the security and the reliability of the borrower. He trusted Morrison with the duty of collecting and remitting to him the interest, seeing that the taxes were paid on the properties, and that the fire insurance policies were kept in force. Dr. Wills was asked the specific question as to whether he expected Morrison "to take such steps as would be necessary" in order to protect his (Wills') interest in connection with these loans. His answer was, "Well, I expected him to notify me," which is to say that Morrison had the necessary authority to act but that Dr. Wills expected to be kept advised as to what steps were being taken for his protection.

As to this particular loan, Dr. Wills had no contact whatsoever with the borrowers. He did not know them, was not familiar with the property on which the debt was secured, and made no call upon the debtors for the payment of either the interest or the principal when they were due. Manifestly, all of this was left to Morrison to be handled as he thought best.

Dr. Wills' testimony is that on one occasion when the interest was not paid promptly, he discussed the matter with Mrs. Wills, who was entitled to the interest, and that she said, "whatever Mr. Morrison did about it would be all right." This aptly characterizes the attitude of Dr. Wills himself.

Moreover, we think that the record shows that the trustee understood that he had the implied request or authority of Dr. Wills to foreclose the deed of trust. The advertisement of the sale carried the names of the debtors, the date of the deed of trust, a description of the property, and a recital that the sale was being made at the request of the beneficiary, in front of the local "County Court House." This advertisement was inserted in the daily newspaper published in Harrisonburg which was read by Dr. Wills. The sale was further advertised by large handbills which contained the same information. It is not likely that the trustee would have

thus advertised this property for sale under the very nose of the creditor unless the trustee had thought that he had the authority of the creditor to do so.

Clearly the act of the trustee in selling the property was for the benefit of the creditor secured. The bond was long past due and the debtors had never paid any interest. The trustee would undoubtedly have obtained the express request of Dr. Wills for the sale of the property for the mere asking. Even if Dr. Wills had had actual notice of the sale his position would have been no better. The property brought more than enough to discharge the debt in full and the fact that the creditor secured might have been present at the sale or might have known that the property had been sold would not, of course, have prevented the trustee from thereafter misappropriating the proceeds of the sale. Indeed, we think it is safe to say that had the trustee accounted to the beneficiary for the proceeds no question would have been raised as to the validity of the sale.

We have not overlooked the fact that in this transaction Dr. Wills was acting not for himself but as a receiver and an officer of the court. The record does not contain a copy of the decree under which he was acting in making this loan. Apparently he had broad authority. His testimony is that when he qualified, in 1925, the sum of $8,400 was placed in his hands "for administration and investment," and that the $900 loan here involved was made out of this fund. In this situation we see no reason why he, as receiver, should be exempt from the operation of the equitable principles here involved.

There is, in our opinion, another complete answer to the contention of the receiver that the foreclosure sale should be set aside.

Code, §6196, provides: "Whenever the title to any property, claimed under a conveyance or deed, heretofore or hereafter made, purporting to be in execution of a sale under a deed, deed of trust, mortgage, or any judicial proceeding, according to the terms of said deed,

deed of trust, mortgage, or judicial proceedings, is attacked or called into question in any manner, if it shall appear from the face of such conveyance or deed that such sale has been regularly made in accordance with the terms of such deed, deed of trust, or mortgage, or judicial proceedings, such deed or conveyance shall be *prima facie* evidence that such sale was regularly made and that the other recitals in such deed or conveyance are true."

The deed from Morrison, trustee, to Masters recites that "the present holder of said bond requested the execution of the trust." Under the section just quoted this recital is *prima facie* true and must stand unless the contrary is proved by competent evidence.

While Dr. Wills testified that he did not request the trustee to make the sale of the property, he is not entitled to a decree based upon this testimony unless it is corroborated, for Code, §6209, applies squarely to the present situation.

This is a suit to set aside a deed made by a trustee. Had he been alive he would have been a necessary party. *McDaniel* v. *Baskerville*, 13 Gratt. (54 Va.) 228, 234; *Simon* v. *Ellison*, 90 Va. 157, 158, 17 S. E. 836; Barton's Chancery Practice (3d Ed.), p. 125. Since the trustee is dead his personal representatives became necessary parties. Hence, we have a suit against the personal representatives of a trustee who, by reason of his death, is incapable of testifying, and the receiver is an "adverse or interested party" who seeks a decree founded on his own testimony, as contemplated by the statute.

The crux of Dr. Wills' case is that he did not request or authorize the trustee to foreclose the deed of trust. There is no corroboration, either verbal, documentary or circumstantial, of Dr. Wills' testimony on this essential matter.

There is corroboration of Dr. Wills' testimony that the trustee misappropriated the fund and applied nothing to the debt secured in the deed of trust. But a

trustee's lack of authority to make a foreclosure sale is quite a different matter from his proper application of the proceeds. Misapplication of the proceeds may occur even though the sale be authorized. Moreover, since the purchaser is not required to look to the application of the proceeds (Code, §5167, as amended by Acts 1922, ch. 170, p. 364; Acts 1926, ch. 324, p. 591), failure of the trustee to apply properly the proceeds does not invalidate the sale. On the other hand, lack of authority in the trustee to foreclose goes to the validity of the sale itself.

While the fact that the trustee paid the interest to Dr. Wills and the latter accepted it after the date of the foreclosure sale tends to corroborate Dr. Wills' testimony that he did not know that the property had been actually sold, it is not corroboration of his testimony that he had not requested or authorized the sale. Dr. Wills might have authorized the sale and yet not have known that it had taken place.

In our opinion the decree complained of is right and accordingly it is

*Affirmed.*