WILLIAM M. DEEP, ET AL., ETC.

v.

C. EDWARD ROSE, JR., ET AL.

Record Nos. 841207 and 841609

January 15, 1988

Present: All the Justices

*Parker E. Cherry (Purcell, Cherry, Kerns and Abady*, on briefs), for appellants.

*Lynne Jones Blain (R. Carter Scott, III; Browder, Russell, Morris and Butcher, P.C.*, on brief), for appellee J. W. Keith, Jr.

No briefs or arguments for appellees C. Edward Rose, Jr., J. Edward Seay, Jr., & Associates, Inc., and Mary K. Farrell, Individually and as General Partners in Hermitage Square Limited Partnership; J. Edward Seay, Jr., Individually and as a Managing Partner in Hermitage Square Limited Partnership; Sam T. Beale, Sam Kornblau, Barry Kornblau and Paul F. Silver, Individually as as General Partners in Richmond Hermitage Associates, a Limited Partnership; Jonathan Bryan, Individually and as a Limited Partner in Richmond Hermitage Associates, a Limited Partnership; First and Merchants National Bank; Harry I. Schutte and James H. Loughrie.

RUSSELL, J., delivered the opinion of the Court.

A trustee under a deed of trust on real estate foreclosed after advertising the sale in a manner which failed to comply with the requirements of Code § 55-59.2. The dispositive question in this appeal is whether that failure rendered the sale void, or merely voidable.

Hermitage Square Limited Partnership (Hermitage) was formed in July 1979 to acquire a two-acre parcel of land in Henrico County and to develop a 29-unit rental apartment project. The general partners were J. Edward Seay, Jr., & Associates, Inc., Mary K. Farrell, and C. Edward Rose, Jr. (collectively, Seay). Hermitage acquired the land in October 1979.

Seay conveyed the land in trust to J.W. Keith, trustee, (Keith) to secure a loan not to exceed $175,000 from J.A. Segal, Inc. (Segal). The deed of trust was dated and recorded on September 16, 1980. There were a number of limited partners in Hermitage,[1] all of whom were unaware of this loan and deed of trust.

Payments on the loan became delinquent in early 1981. On July 6, 1981, Keith informed Seay, by letter, that he would be required to foreclose at the direction of the noteholder unless the loan were repaid in full by July 22, 1981. Keith subsequently wrote to Seay, extending the deadline to July 31. In late July, the limited partners first learned of the debt to Segal, of the delinquency of that and other debts owed by Hermitage, and of their own possible exposure to the debts because of Seay's failure to record the partnership agreement.

The deed of trust contained the following provision with respect to advertisement before sale:

Advertisement required: five (5) times in a newspaper published or having general circulation in the City or County in which the property lies.

Code § 55-59.2 provides, in pertinent part: "Notwithstanding the provisions of the deed of trust, the sale shall be held on any day following the day of the last advertisement which is no earlier

---

[1] The limited partners were William M. Deep, Kenneth M. Perry, Betty C. Perry, A. Aghdami, Khalil Shirazi, Andrew S. Buccini, Mary Buccini, Charles M. Terry, and Gene Cook.

than eight days following the first advertisement nor more than thirty days following the last advertisement."

Keith mailed a foreclosure notice with a proposed advertisement to the *Richmond Times-Dispatch*, a newspaper of general circulation in Henrico County. Keith requested publication on five successive days, October 23, 24, 25, 26, and 27, 1981. The advertised date of sale was to have been the sixth day, October 28. Before the first day of publication, however, Keith wrote to the newspaper to amend the notice to provide for a sale on the fifth day of publication, October 27.

The newspaper published the advertisement on the dates requested, and on October 27, 1981, Keith conducted the sale. The limited partners were unaware of the sale and none attended it. The property was knocked down to Richmond Hermitage Associates for a sum sufficient to pay off the Segal note but not the mechanic's liens and other debts. The new owner borrowed further funds and completed the project.

Keith filed his accounting for the sale with the Commissioner of Accounts of Henrico County. In May 1982, the commissioner refused to approve it, noting that Keith's advertisement and sale had violated Code § 55-59.2. On August 12, 1982, the limited partners filed this suit to set aside the foreclosure sale.[2] The commissioner of accounts thereafter reported to the court that the trustee's claims for expenses and commissions should be disallowed. The limited partners asked to be made parties to any proceedings concerning the trustee's accounting. By an agreed order, that issue was added to this suit for adjudication.

The chancellor heard evidence *ore tenus*. On May 3, 1984, by letter opinion, the chancellor ruled that the advertisement preceding the foreclosure sale did not substantially comply with the requirements of Code § 55-59.2, but that the effect of that violation did not render the sale void, but merely voidable. On the facts in evidence, the chancellor found that the right of the limited partners to set the sale aside was barred by laches. This ruling was

---

[2] The limited partners were the complainants. They joined as defendants J. Edward Seay, Jr., & Associates, Inc., J. Edward Seay, C. Edward Rose, Jr. (dismissed as a party to this suit on May 18, 1983), and Mary K. Farrell, general partners in Hermitage, and Sam T. Beale, Sam Kornblau, Barry Kornblau, and Paul F. Silver, general partners, and Johnathan Bryan, a limited partner in Richmond Hermitage Associates. Other defendants were Keith, Segal, and the trustees and noteholder under a new deed of trust given by Richmond Hermitage Associates after the foreclosure sale.

based on findings that Seay, as general partner and managing partner, had notice of the sale before it was held, even though the limited partners were unaware of it; that the limited partners were aware, after July 27, 1981, that Hermitage was in default on its obligations; and that the foreclosure notice was published in a newspaper widely circulated in the area. On June 5, 1984, the court entered a final decree refusing to set the sale aside. We granted the limited partners an appeal (Record No. 841207).

After further consideration of the report of the commissioner of accounts, the court concluded that although Keith had failed to comply with Code § 55-59.2, he had partially performed his duties to the trust because the sale had caused title to pass to the purchaser and had resulted in payment of Segal's secured note in full. The court therefore decided that the trustee had earned partial compensation. By order entered August 30, 1984, the court awarded the trustee one-half the statutory commission on the sale, together with his expenses. We awarded the limited partners a further appeal to that order (Record No. 841609).

█ Code § 55-59.2 evidences a strong legislative concern with the sufficiency of advertisements preceding foreclosure sales, with a purpose to insure a degree of publication that will generate sufficient interest to obtain the highest price available as well as to offer the debtor a reasonable time to redeem the debt. That legislative concern has increased with the passage of time.

Prior to 1940, no newspaper publication was required, and the nature and extent of advertisement before foreclosure sale was left to the discretion of the trustee. Section 5167 of the 1919 Code merely required the trustee to give "reasonable notice of the time and place of sale." Advertisement was frequently made by the posting of handbills. *See Hopkins* v. *Givens*, 119 Va. 578, 89 S.E. 871 (1916). In 1926, Code § 5167 was amended to provide that the trustee must first advertise "the time, place and terms of sale in such manner as the deed may provide, or, if none be provided, then in such reasonable manner as the trustee may elect, no notice to the grantor . . . being required." Acts 1926, c. 324.

In 1940, for the first time, the requirement of newspaper publication was introduced, but only where the deed of trust was silent. Code § 5167 was then amended to provide that before any foreclosure sale, the trustee must first advertise "the time, place and terms of sale in such manner as the deed may provide, or, if none be provided, after first advertising the time, place and terms of

sale once a week for four successive weeks in a newspaper published or having general circulation in the county. . . ." Acts 1940, c. 426. In *Gloucester Realty Corp. v. Guthrie*, 182 Va. 869, 873, 30 S.E.2d 686 (1944), we held that such tightening of the legislative requirements had no retrospective effect, and that the law in effect at the time of execution of the deed of trust, rather than the law in effect at the time of foreclosure, governed the sale.

In 1944, provision was made for publication "five times in a newspaper published in such city (the last insertion if desired on the day of sale). . . ." if the property were located in a city or in a county containing a city. Acts 1944, c. 329; Code § 55-59(7) (1950); but again, only where the deed of trust was silent.

The statute was further amended to provide, where the deed of trust was silent as to advertisement, that the trustee must advertise "the time, place and terms of sale once a week for four successive weeks in a newspaper published or having general circulation in the county . . . and may sell such property on the twenty-second day after the first advertisement or any day thereafter." Code § 55-59(6) (1974 Repl. Vol.) The requirement of notice to the grantor was first introduced in 1973. *Id.*; Acts 1973, c. 341.

The growing trend toward strictness in advertising requirements culminated in 1979, with the enactment of Code §§ 55-59.1, requiring 14 days written notice of sale to the debtor, and 55-59.2, with which we are here concerned, as well as amendments to § 55-63, which further specify time limitations. Section 55-59.2, for the first time, specified that advertisement must be only by newspaper publication.

█ It is apparent from the language of § 55-59.2, quoted above, that the eight-day minimum and thirty-day maximum periods between advertisement and sale are intended to be mandatory, overriding for the first time in the history of these statutes both the discretion of the trustee and the contractual terms adopted by the parties to the deed of trust. In this crucial respect, the statute before us differs from all its predecessors.

Because this is the first case in which we have been required to decide the effect of the violation of mandatory statutory provisions governing advertisement before foreclosure sales, our prior decisions, which turned on various violations of contractual terms, are of little assistance. *See, e.g., First Funding Corp. v. Birge*, 220 Va. 326, 333, 257 S.E.2d 861, 865 (1979) (trustees gave subordinations not in accord with deed of trust; held "void ab initio");

*Turk* v. *Clark*, 193 Va. 744, 749-750, 71 S.E.2d 172, 176 (1952) (trustee failed to advertise and give notice as required by trust; sale held "wholly void"); *Wills* v. *Chesapeake Western Ry.*, 178 Va. 314, 320, 16 S.E.2d 649, 652 (1941) (trustee allegedly sold without authority; sale held "not a nullity," purchaser obtains legal title which may be set aside in equity); *Everette* v. *Woodward*, 162 Va. 419, 424, 174 S.E. 864, 866 (1934) (trustee failed to advertise as required by trust; even though legal title had passed to purchaser, sale was subject to being held "invalid" in equity); *Dickerson* v. *McNulty*, 142 Va. 559, 129 S.E. 242 (1925) (trustee failed to advertise for length of time required by trust, purchaser refused deed; sale held void); *Tabet* v. *Goodman*, 136 Va. 526, 530, 118 S.E. 230, 233 (1923) (trustee failed to advertise as required by trust; held title passed at law but sale set aside in equity, deed "adjudged null and void"); *Smith* v. *Woodward*, 122 Va. 356, 94 S.E. 916 (1918) (trustee sold more land than necessary to satisfy debt; sale held voidable in equity); *Preston* v. *Johnson*, 105 Va. 238, 241, 53 S.E. 1, 2 (1906) (trustee failed to advertise terms of sale as required by trust; sale held "invalid" and set aside); *Wilson* v. *Wall*, 99 Va. 353, 38 S.E. 181 (1901) (laches barred debtor's suit to set aside sale allegedly insufficiently advertised).

Both §§ 55-59.1 and 55-59.2 were adopted as part of a single enactment, Acts 1979, c. 12. But there is a significant difference between them. After providing for written notice to the debtor, § 55-59.1 provides: "Failure to comply with the requirements of notice contained in this section shall not affect the validity of the sale under the deed of trust. . . ." Code § 55-59.2, although a part of the same act, contains no such ameliorative language in case of failure to follow its mandatory time periods. It is apparent that the General Assembly intended that different consequences would flow from violations of these respective sections.

■ In view of the manifest legislative purpose underlying the increasing stringency of the advertisement requirements which culminated in Code § 55-59.2, and in light of its language, we conclude that sales made in violation of its mandatory time periods are void, not merely voidable. The result is to render the sale ineffectual. No title, legal or equitable, passes to the purchaser.

The result is not as draconian as the appellees contend. It might be difficult for a purchaser at a foreclosure sale to ascertain whether 14 days personal notice had been given to the debtor as

required by Code § 55-59.1, and the legislature, undoubtedly for that reason, relieved the purchaser of the consequences of the trustee's failure in that respect. By contrast, a purchaser who has been attracted to a sale by a series of newspaper advertisements has ready means of ascertaining whether the sale falls within the prescribed time period after publication, as required by Code § 55-59.2. If the sale falls without that period, he need not bid. In the case before us, the dates of publication and the date of sale are recited on the face of the deed, making the trustee's failure to comply with the statute fully apparent to the purchaser at the time of settlement.

■ Our holding is limited to the effect of Code § 55-59.2, and does not apply to its relatively permissive statutory predecessors, to other statutes relating to foreclosure sales, or to violations of the terms contained in deeds of trust concerning advertisement and sale.

■ Because the actions of the trustee rendered no service to the trust or to the parties, except to embroil them in this litigation, the chancellor erred in allowing him any commissions or expenses. We will reverse both decrees and remand the cause for entry of a decree setting aside the foreclosure sale, granting such other relief, consistent with this opinion, as may be appropriate, and confirming the report of the commissioner of accounts with respect to the trustee's claims for commissions and expenses.

*Reversed and remanded.*