## CIRCUIT COURT OF FAIRFAX COUNTY

Jerry E. Wilburn
and Elizabeth M. Wilburn

v.

Pinewood Lawns
Condominium Phase I
Council of Co-Owners et al.

August 12, 2004

Case No. (Chancery) 180106

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

This matter was before me on the Petition to Set Aside a Nonjudicial Foreclosure Sale of a Condominium Unit pursuant to § 55-79.84 of the Condominium Act. For the reasons discussed below, I grant the petition.

The Petitioners, Jerry E. Wilburn and Elizabeth M. Wilburn, were the owners of a condominium unit known as 8401 Huerta Court # 172, Alexandria, Virginia 22309. On September 29, 2000, the Defendant Pinewood Lawns Condominium, Phase I Council of Co-Owners (" Co-Owners") filed with the clerk's office for the Fairfax County Circuit Court a memorandum of condominium lien for unpaid assessments from July 1, 2000, accelerated through December 31, 2000. On March 29, 2001, the Co-Owners filed another memorandum of condominium lien for unpaid assessments from January 1,

2001, accelerated through December 31, 2001. The memoranda were verified by Peter S. Philbin.

On May 18, 2001, Rees, Broom & Diaz ("law firm"), as counsel for the Co-Owners, sent the Wilburns a letter advising that they had ten days to contact counsel for the Co-Owners to stop the foreclosure of the liens. On November 16, 2001, the law firm sent the Wilburns notice of the Co-Owners' intent to foreclose its lien through the nonjudicial foreclosure procedures of § 55-79.84 of the Condominium Act. The Co-Owners gave the Wilburns until December 14, 2001, to pay off their balance. The Wilburns allege that, after receiving the November 16, 2001, letter, they contacted the law firm in an attempt to establish a payment plan. The Wilburns claim that, as a result of this communication, they believed the December 14, 2001, sale date had been cancelled. The Wilburns also claim that they contested the amount of assessments owed.

The law firm published in the *Fairfax Journal* notices of sale of the real property located at 8401 Huerta Court # 172 pursuant to assessment liens under § 55-79.84 on November 21 and 28 and December 4 and 11, 2001.

On December 14, 2001, the Co-Owners sold 8401 Huerta Court # 172 at public auction to the highest bidder, Defendants Thanh Hoang and Minh-Vu Hoang. The Co-Owners and Baltimore, as statutory agent for the Wilburns, executed a quit claim deed in favor of the Hoangs.

Defendant Alliance Mortgage Company ("Alliance") is the assignee of a first deed of trust recorded against 8401 Huerta Court # 172.

The Wilburns ask the court to set aside the nonjudicial foreclosure sale. They argue that the Co-Owners and Baltimore did not follow the nonjudicial foreclosure procedures established by § 55-79.84 of the Condominium Act. They also contend that the statutory nonjudicial foreclosure scheme is impermissibly vague and denies unit owners of property due process of law.

The Wilburns claim that the first lien was not timely filed; that the liens were not verified and executed properly; that the Co-Owners and Baltimore failed to provide them with a copy of the advertisement of sale placed in the *Fairfax Journal*; that the proceeds of the foreclosure sale were not applied properly; that the Defendants denied them their equity of redemption; and that the Co-Owners and Baltimore lacked the authority to execute a deed on the Wilburns' behalf.

The Wilburns further assert that § 55-79.84(I) is impermissibly vague because it does not provide any mechanism for the transfer of title when a unit owners' association sells a unit at a nonjudicial foreclosure sale. They argue that the nonjudicial foreclosure scheme violates their due process rights by not requiring a neutral third party to conduct the sale, by not providing a

mechanism for unit owners to challenge in court the nonjudicial foreclosure proceedings, and by not requiring an accounting of the proceeds of the sale.

In response, the Co-Owners, Baltimore, Alliance, and the Hoangs deny that the sale violated any provision of the Condominium Act. All of the Defendants, with the exception of Alliance, deny that the nonjudicial foreclosure provisions of the Condominium Act are impermissibly vague or unconstitutional.

I find that both liens were timely filed. A lien for unpaid assessments is not perfected unless the unit owners' association files a memorandum of lien no more than ninety days from the time the first assessment becomes due. See Va. Code Ann. § 55-79.84(C). The Co-Owners filed the first memorandum of unpaid assessments with the clerk's office of the Fairfax County Circuit Court on the ninetieth day after the first assessment became due. The Wilburns acknowledge that the second memorandum of unpaid assessments was timely filed.

As to verification of the liens, the Condominium Act provides that memoranda of lien for unpaid assessments must be "verified by the oath of the principal officer of the unit owners' association, or such other officer or officers as the *condominium instruments* may specify. . . ." Va. Code Ann. § 55-79.84(C) (emphasis added). In this case, Philbin, counsel for the Co-Owners, verified the memoranda. Because Philbin was not and is not the principal officer of the Co-Owners, the *condominium instruments* must specify that he is an officer with the authority to verify memoranda of unpaid assessments. Philbin's authority was based on a policy resolution of the 1994 Pinewood Lawns Condominium Council of Co-Owners appointing him as Assistant Secretary for the purpose of signing and releasing memoranda of lien for unpaid assessments. (See Petitioners' Ex. 4.) Section 55-79.41 of the Condominium Act defines the term "condominium instrument." The definition does not include policy resolutions made by the executive officers of the condominium association. In fact, § 55-79.71(B) provides that the condominium instrument may be amended only by a vote of the unit owners. The unit owners did not vote on the policy resolution, so it did not amend the condominium instrument and it is not a part of the condominium instrument. The Co-Owners also contend that their conduct thereafter ratified Philbin's actions. When a statute requires certain steps for a grant of authority, ratification cannot cure a failure to comply with those steps. Therefore, Philbin did not have the authority to verify the memoranda of liens and the memoranda were not verified properly.

I further find that the acceleration of the assessments against the Wilburns was not validly made. Section 55-79.75(C) provides that a motion passed in an executive (closed) session does not become effective until passed in an open

meeting of the unit owners. There is no evidence that the Co-Owners held an open meeting vote on the acceleration of assessments against the Wilburns. The Co-Owners may have taken such a vote in executive session, but any motion voted on in executive session must then be voted on in open session to become effective. Minutes from open sessions of the Co-Owners indicate that such votes were taken as to other condominium owners in the past, but minutes of the open sessions make no reference to a vote on the Wilburns. The acceleration of the assessments cannot become effective without such a vote.

As to notice, § 55-79.84(I)(1) specifies what notice a unit owner must receive before the unit owners' association may hold a nonjudicial foreclosure sale of the unit. Under § 55-79.84(I)(1)(i), the unit owners' association must give the unit owner notice of the time, place, and date of the foreclosure sale. The November 16, 2001, foreclosure notice referenced the date and place but did not specify the time of sale. I find that notice given to the Wilburns did not meet the requirements of § 55-79.84(I)(1).

The Wilburns contend that the Co-Owners failed to provide them with a copy of the advertisement placed in the *Fairfax Journal*. I find that nothing in the statute requires a unit owners' association to send a copy of the advertisement of sale of a unit to the unit owner. Section 55-79.84(I)(1) lists the information about a foreclosure sale that a unit owners' association must give the owner of the unit. The Co-Owners did provide the required details about the sale.

I find that nothing said to the Wilburns by a paralegal at the law firm could have reasonably led them to believe that the foreclosure sale would be postponed or cancelled. The paralegal had no authority to bind the Co-Owners. Further, no commitment to stop the foreclosure sale was made; indeed, the subject of the foreclosure sale did not even come up in the Wilburns' conversations with the paralegal.

A unit owners' association must first use the proceeds of a nonjudicial foreclosure sale to satisfy prior superior liens. See *Colchester Towne Condo. Council of Co-Owners v. Wachovia Bank, N.A.*, 266 Va. 46, 52, 581 S.E.2d 201, 204 (2003). Section 55-79.84(A) of the Condominium Act defines prior superior liens. Under this section, a prior first deed of trust is a prior superior lien. Therefore, Alliance holds a prior superior lien and the Co-Owners should have first used the proceeds to satisfy this lien. But for the foregoing bases on which I set the sale aside, the appropriate remedy for improper application of the sale proceeds would be to redistribute the proceeds; it is not grounds to set aside the sale in itself. See *Homeside Lending, Inc. v. Unit Owners Ass'n of Antietam Square Condo.*, 261 Va. 161, 168, 540 S.E.2d 894, 897 (2001); see also *Wills v. Chesapeake W. Ry.*, 178 Va. 314, 324, 16 S.E.2d 649, 654 (1941) (noting that the failure of a

trustee to properly apply the proceeds from a sale pursuant to foreclosure of a deed of trust does not invalidate the sale).

Section 55-79.84(I)(5)(c) requires the unit owners' association to "receive and receipt for the proceeds of sale. . . ." A 2004 amendment to the statute requires trustees to file an accounting. No such language is found in the version of the statute in existence at the time of this foreclosure sale. I find that the Co-Owners sufficiently complied with the requirement of "receive and receipt for the proceeds of sale" (albeit in a manner contrary to that required by *Colchester Towne Condo.*).

I find that the Condominium Act is not impermissibly vague or unconstitutional.

For the foregoing reasons, I find that the Co-Owners and Baltimore failed to conduct the nonjudicial foreclosure sale in accordance with the requirements of the Code of Virginia, and I grant the petition to set the sale aside.