## CIRCUIT COURT OF THE CITY OF NORFOLK

In re Trustee's Sale
of the Property of Willie Brown
located at 2750 Sewell's Point Road,
Norfolk, Virginia

In re Trustee's Sale
of the Property of
Florence M. Butler, III,
located at 859 Norview Avenue,
Norfolk, Virginia

March 25, 2005

BY JUDGE CHARLES E. POSTON

These matters are before the Court upon exceptions to the Report of the Commissioner of Accounts filed on November 24, 2004. Having considered the Report and the submissions of counsel, the Court sustains the exceptions in part and remands these matters to the Commissioner for further proceedings.

*Facts*

The operative facts are not disputed. In each cause, the noteholders, as permitted by the deeds of trust, appointed two substitute trustees. The first trustee, the Law Office of Steven J. Melmet, Inc. ("Melmet"), is a California corporation authorized to transact business in Virginia. To that end, it

maintains a registered agent and registered office in the Commonwealth. The second trustee, Colchester Hunt Title and Escrow, Inc. ("Colchester"), is a Virginia corporation whose principal office is located in Fairfax County, Virginia. Under the terms of appointment, either trustee could act alone or in concert with one another.

On April 8, 2003, the Commissioner of Accounts received the Trustee's Report of Sale for the Brown property. Melmet alone signed that report. The Trustee's Report of Sale for the Butler Property reached the Commissioner on June 27, 2003, and it, too, was signed only by Melmet. After exchanges of correspondence between the Commissioner and Melmet, Colchester submitted amended reports that were identical to those filed by Melmet, with only one exception: Colchester signed instead of Melmet.

Preceding the sale of both properties, Colchester performed the following acts:

1. Sent written notice to all parties advising them of the time, date, and place of the trustee's sale as required by Code of Virginia § 55-59.1(A);

2. Identified itself as trustee in an advertisement placed in a newspaper "having a general circulation" for the specified period as required by Code of Virginia § 55-59.2(A)(1);

3. Conducted the sale and delivered the trustee's deed to the purchaser; and

4. Solely executed each deed.

Upon these facts, the Commissioner disapproved each report of sale. He reported that the sales were "null and void, *ab initio*" because the appointment of Melmet as substitute trustee violated Code of Virginia § 55-58.1(2). In response, Colchester filed its Exceptions to the Commissioner's Report on December 9, 2004. In its exceptions Colchester outlines several reasons why the Commissioner's findings were flawed. When examined, however, it contests the Commissioner's Report on two grounds:

1. The Commissioner's authority extends only to reviewing and approving the accountings of trustee's sales and does not include jurisdiction to invalidate such sales.

2. The Commissioner erroneously concluded that the mere appointment of Melmet as one of two substitute trustees invalidated the subsequent foreclosure sales.

*Analysis*

The court has the duty to examine exceptions to a Commissioner's report and correct any errors that appear in his findings. Va. Code Ann. § 26-33

(Michie 2004). Although a court is given discretion to review a Commissioner's findings, "it cannot arbitrarily disturb the report, if it is supported by sufficient proof." *Hudson v. Clark*, 200 Va. 325, 329, 106 S.E.2d 133, 136 (1958). This rule applies with particular force to a Commissioner's findings of fact based upon evidence taken in his presence, but is not applicable to pure conclusions of law contained in the report. *Hill v. Hill*, 227 Va. 569, 577, 318 S.E.2d 292, 297 (1984) (citations omitted).

*Exception No. 1: Does a Commissioner of Accounts have authority to withhold approval of an accounting because of an irregularity in a foreclosure sale?*

The Commissioner and Colchester disagree as to the nature and extent of the responsibilities of a Commissioner of Accounts. The Commissioner claims more expanded responsibilities and cites them as a basis for refusing an accounting based upon an irregularity in a foreclosure sale. Colchester, on the other hand, argues that the responsibilities of a Commissioner in settling accounts are substantially more limited than the Commissioner asserts and urges that a Commissioner's duties are limited to looking only at credits and debits.

The Office of the Commissioner of Accounts is unique to Virginia and West Virginia, having been established in the Commonwealth in 1849 to provide a less expensive and more efficient system of estate administration. Frank O. Brown, Jr., *Virginia Practice: Probate Handbook*, § 2:11 (2005) (citing *Carter's Adm'r v. Skillman*, 108 Va. 204, 60 S.E. 775 (1908)). In this system, a Commissioner serves as the executive arm of the probate side of the circuit court. *Id.; see also Raiford v. Raiford*, 193 Va. 221, 226, 68 S.E.2d 888, 892 (1952) (citation omitted). He is an independent, quasi-judicial officer, appointed by the judges of each circuit court, and he serves at their pleasure. Va. Code Ann. § 26-8 (Michie 2004); *see also, American Bonding Co. v. American Surety Co.*, 127 Va. 209, 218, 103 S.E. 599, 601 (1920); *Mountain Lake Land Co. v. Blair*, 109 Va. 147, 159, 63 S.E. 751, 755 (1909); *Fayette Land Co. v. Louisville, etc., RR.*, 93 Va. 274, 284, 24 S.E. 1016, 1018 (1896). A Commissioner's responsibilities are such as to make his office one of the most important in the Commonwealth, in every aspect of probate jurisprudence and administration. B. Lamb, *Virginia Probate Practice*, § 107 (1957).

A Commissioner of Accounts is charged with supervising all fiduciaries under his jurisdiction. Va. Code Ann. § 26-8 (Michie 2004). His specific duties and functions are outlined in Chapter 2, Title 26, of the Code of

Virginia. According to these statutes a Commissioner has the authority to do the following:

1. Supervise all fiduciaries and make all *ex parte* settlements of their accounts. Va. Code Ann. § 26-8 (Michie 2004).

2. Determine whether a personal representative has given bond as required by law and whether it is of sufficient penalty and with sufficient sureties. Va. Code Ann. § 26-2 (Michie 2004).

3. Issue subpoenas to require any person to appear before him on matters relating to the administration of estates; issue subpoenas *duces tecum* to require the production of any documents or papers before him; certify to the circuit court a person's failure to appear or to produce documents or papers. Va. Code Ann. § 26-8.1 (Michie 2004).

4. Keep a book or other property record listing all fiduciaries; record the essential information regarding their qualification and administration. Va. Code Ann. § 26-9 (Michie 2004).

5. Issue and serve a summons upon a fiduciary who fails to file an inventory or an account in a timely manner; report to the court a fiduciary's failure to comply with the summons; mail a copy of his report to the Virginia State Bar whenever a fiduciary, who is an attorney-at-law licensed to practice in the Commonwealth, has failed to make the required return within thirty days after the date of service of a summons. Va. Code Ann. § 26-13 (Michie 2004); Va. Code Ann. § 26-15 (Michie 2004); Va. Code Ann. § 26-18 (Michie 2004).

6. Inspect all inventories returned to him by fiduciaries; see that they are in proper form; and, within ten days after they are respectively received and approved by him, deliver them to the clerk of the court to be recorded as required by law. Va. Code Ann. § 26-14 (Michie 2004).

7. State, settle, and report to the court an account of sales made under a deed of trust. Va. Code Ann. § 26-15 (Michie 2004).

8. Require each disbursement to be supported by a proper voucher. Va. Code Ann. § 26-17.9 (Michie 2004).

9. Allow a fiduciary any reasonable expenses incurred by him and a reasonable compensation. Va. Code Ann. § 26-30 (Michie 2004).

10. File a report in the office of the court by which he is appointed. Va. Code Ann. § 26-32 (Michie 2004).

11. Ensure that a fiduciary has kept estate funds fully invested. Va. Code Ann. § 26-39 (Michie 2004).

These statutory provisions make it clear that a Commissioner has the general authority to review, audit, and approve inventories and accounts filed by fiduciaries and report to the circuit court on the status of fiduciaries and

their accounts[1]. Despite the appearance of a seemingly limited role, a Commissioner actually fulfills a wide variety of functions. According to the *Manual for Commissioner of Accounts* authored by the Standing Committee on Commissioners of Accounts of the Judicial Council of Virginia, a Commissioner's role includes:

> serving as a quasi-judicial official; auditing fiduciary accounts properly; protecting the public and creditors; implementing the terms of the will, trust, and court orders; protecting the interest of taxing authorities; implementing Titles 26, 31, 37.1, 55, and 64.1 of the Virginia Code; serving as an informal mediator between parties at interest; protecting the rights of persons under disabilities; recognizing fraud or the opportunity for fraud; and educating practitioners and users of the system.

*Manual for Commissioners of Accounts*, § 20.202 (3d ed. 2004).

It is apparent from the above list that a Commissioner has a unique role in the Virginia judicial system. He is responsible for protecting the interests of a diverse group of individuals and entities by ensuring compliance with all statutory requirements.

Despite the importance of a Commissioner of Accounts, Colchester argues that a Commissioner's powers and duties are severely limited. It contends a Commissioner's sole responsibility is merely to review and approve accounts, *i.e.* what money the fiduciary received, and how the fiduciary accounted for that money. In particular, Colchester pleads that a Commissioner lacks the authority to withhold approval of an accounting because of an irregularity in a foreclosure sale.

To support its narrow view of a Commissioner's authority, Colchester cites *In re Four Accountings of Trustees' Sales*, 40 Va. Cir. 324 (Prince William County 1996). In *In re Four Accountings*, a Commissioner of Accounts attempted to withhold approval of an accounting because of irregularities in a foreclosure sale. In response to these actions, the court held that such activities were the province of the court and not within the purview of a Commissioner's authority. *Id.* at 324-25. More specifically the court stated:

---

[1] The Code of Virginia also sets forth that the Commissioner lacks the specific power "to punish any person for contempt for failure to appear or to produce documents or papers. . . ." Va. Code Ann. § 26-8.1 (Michie 2004).

[t]he court is of the opinion that the settlement of accounts of trustees under security deeds of trust before Commissioners of Accounts does not contemplate opening the door to allow any irregularity in the procedures involved in the sale to serve as a ground for refusal by the Commissioner to approve such an account. The Commissioner must look to the accounting itself. Those matters outside of the accounting, although they may be unlawful, should be the subject of other judicial determination.

*Id.*

Colchester urges the Court to adopt the reasoning set forth in *In re Four Accountings* and hold that the Commissioner exceeded his authority by declaring the Brown and Butler foreclosure sales void *ab initio*. The Court, however, disagrees with Colchester's confined view of the Commissioner's authority and declines to adopt the principles set forth in that case.

In Virginia, circuit courts are vested with jurisdiction over fiduciary matters, including the administration of estates. *See* Va. Code Ann. §§ 26-8 to 26-37 (Michie 2004). If circuit courts were required to perform every aspect of this function, in addition to the normal business of the court, they would become unduly burdened. *Shipman v. Fletcher*, 91 Va. 473, 476, 22 S.E. 458, 460 (1895). As a solution to this problem, the Commonwealth established the Office of the Commissioner of Accounts. *See, Carter's Adm'r v. Skillman*, 108 Va. 204, 207, 60 S.E. 775, 776 (1908).

The present Office of the Commissioner of Accounts evolved from the established position of the Commissioner in Chancery. The Code of Virginia did not explicitly adopt the title "Commissioner of Accounts" until 1873, but the present scheme for the settlement of fiduciaries' accounts was first established in 1849.[2] In creating the specific statutory provisions for chapter 132 of the Code of Virginia of 1849, the authors described the problems to be remedied by this innovative system:

There is probably no subject in relation to which we have received more communications, written and oral, than in relation to the settlement of accounts of personal representatives of decedents and

---

[2] According to the Code of 1873 "[t]he judge of each circuit court having jurisdiction of the probate of wills and granting administration in the state shall designate one of its commissioners in chancery, who shall be known as the *commissioner of accounts*." Va. Code of 1873, ch. 128, § 1 (emphasis added).

guardians and committees of wards and insane persons. The evils attending the settlement of such accounts under the present system appear to have been most extensively felt.

1st. When the settlement of the accounts of an executor or administrator takes place under the order of the court of probate, it is by commissioners appointed on his motion, and generally his friends and neighbors. They are often persons who have no knowledge of the principles on which the account should be stated and no disposition to scrutinize it very closely. Their report is often drawn off for them by the fiduciary himself and (it is believed) is not infrequently signed by them, without even examining the vouchers. It seldom happens that those interested have any knowledge of its being made until it has been recorded, which in most cases is done in a county or corporation court, and almost invariably without being looked at either by the court or anybody else. No wonder settlements thus made have proved most fertile sources of litigation. Constantly, it happens that, many years after they have been recorded, bills are filed in equity to have a correct settlement of the accounts; and when that settlement is had, it often exhibits against the fiduciary a balance, the amount of which surprises him, if he be alive, and not infrequently ruins him or his estate. Far better would it be for him that his accounts should be settled correctly in the first instance, and his mode of living adapted to the real state of his indebtedness, than that he should be living for years under the idea that he owes nothing, and then have his estate swallowed up by a debt, of the existence of which he was not before aware. Far better too would it be for those in whose favor the claim exists, that it should be established at an early period, when means might exist for its satisfaction, than many years after, when those means have become greatly impaired. Our conviction is that, while the present mode of settling such accounts by commissioners appointed on the motion of the executor or administrator is nominally cheap, being effected in a large number of cases through friends and neighbors acting without charge, it is, if we look at its results, in a number of cases equally large, about as costly and injurious a mode of settlement as could well be devised. We think it must be a great improvement to have such accounts settled by commissioners holding their offices under appointment of the circuit courts; commissioners appointed such because of

their acquaintance with the principles on which the accounts should be stated, and from whom, therefore, a settlement on proper principles may generally be expected. We think too, benefit will result from having the reports of such settlements returned in all cases to the circuit courts, which may be expected better to examine into, and more correctly to decide upon, the matters arising on such accounts, then could be done in the county and corporation courts.

*Report of Revisors of Virginia Code*, 1849, ch. 132, p. 676, note; *see also Carter's Adm'r*, 108 Va. at 207, 60 S.E. at 776; *Nicholas v. Nicholas*, 169 Va. 399, 402, 193 S.E. 689, 690 (1937). Upon the Revisors' recommendation, the General Assembly adopted the present system as a means of economic, efficient, and accurate settlement of accounts before objective and qualified commissioners.

A Commissioner of Accounts, then, may logically be viewed as a Commissioner in Chancery to whom a specific jurisdiction or specialized duties are granted. Despite his specific duties, the scope of a Commissioner's inquiry with respect to accounts before him is not precisely stated in the statutes. It is true that a Commissioner is required to review an account to determine that it is mathematically correct, that all income items have been credited, and that there has been compliance with all other technical requirements. However, if a Commissioner's inquiry were merely an accounting exercise, he could not complete the tasks for which he is appointed – to review accounts and make rulings, which, unless exceptions are filed and sustained, become confirmed and thereby equal in dignity to the rulings of the Court. Va. Code Ann. §§ 28-33 and 28-34 (Michie 2004).

As a quasi-judicial officer, a Commissioner fulfills many important duties that otherwise would be brought before the court. *Raiford*, 193 Va. at 226, 68 S.E.2d at 891. To perform his duties on behalf of the court, a Commissioner's authority must extend to every aspect of law or fact related to a fiduciary's duties, qualifications, and actions that may affect the rights of a beneficiary of an estate or a fund before him. No question of law, equity, or disputed fact concerning an account should be insulated from a Commissioner's inquiry. *See, Bowers v. Bowers*, 70 Va. (29 Gratt.) 697, 700 (1878). Were a Commissioner of Accounts to be prohibited from considering such matters, how could he accurately and effectively assist the court? It would be an absurd result for a Commissioner, knowing that there was a legal defect in the conduct of the sale, the accounting, or the fiduciary's qualifications, to approve an accounting simply because it was mathematically

correct. Therefore, the Court holds that a Commissioner has the power and, indeed, the duty to reject an accounting if his examination reveals a failure by a fiduciary to comply with a statutory duty. *See, Deep v. Rose*, 234 Va. 631, 634, 364 S.E.2d 228, 230 (1988); *Wills v. Chesapeake W. Ry.*, 178 Va. 314, 16 S.E.2d 649 (1941). A Commissioner's authority to review an accounting is particularly important in regards to foreclosure sales, where, because of the impecuniousness of the borrower, he is often without the means to contest the actions of the trustee. To hold otherwise would ignore more than a century of accepted probate practice in the Commonwealth. The fiduciary's remedy, if he believes a Commissioner to be in error, is to except to the report and bring the issue before the court. Va. Code Ann. § 26-29 (Michie 2004).

*Exception No. 2: Does the appointment of an unqualified substitute trustee invalidate a subsequent foreclosure sale?*

A defective foreclosure may be void in its entirety, or may be merely voidable, in which a case a court of equity may set it aside. *See, Deep v. Rose*, 234 Va. 631, 364 S.E.2d 228 (1988). However, not all defects in a foreclosure sale render the sale void. A sale under a deed of trust will only be set aside for weighty reasons; it will not be declared a nullity on mere technical grounds. *See, Fralin v. Aronovitch*, 247 F.2d 468, 471 (4th Cir. 1957) (discussing *Linney v. Normoyle*, 145 Va. 589, 134 S.E. 554 (1926)); *Wills v. Chesapeake W. Ry.*, 178 Va. 314, 16 S.E.2d 649 (1941). The issue presented to the Court is whether the mere appointment of a foreign corporation together with a Virginia corporation as co-trustees renders a foreclosure sale invalid.

If an out-of-state lender initiates a foreclosure in the Commonwealth, he must appoint a Virginia resident to serve as trustee. *United States v. Romer*, 148 F.2d 359, 370 (4th Cir. 1998). More specifically, Code of Virginia § 55-58.1(2) states, in pertinent part, "[n]o corporation may be named or act as the trustee or as one of the trustees of a security trust unless it is chartered under the law of this Commonwealth or of the United States of America, and unless its principal office is within this Commonwealth." In the present causes, it is undisputed that Melmet was named substitute trustee of a security trust. It is also undisputed that Melmet is not a corporation chartered under the laws of Virginia or the United States of America and does not have its principal office within the Commonwealth of Virginia. Thus, it is clear that under Code of Virginia § 55-58.1(2), Melmet was not qualified to be named or act as a trustee in the Brown and Butler foreclosures.

Because an unqualified corporation was appointed as a substitute trustee, the Commissioner declared the Brown and Butler foreclosure sales nullities

and disapproved the accounting. The Court has already held that a Commissioner may disapprove an accounting based upon a statutory violation. However, the Court also holds that the mere naming of Melmet as substitute trustee was not sufficient to set aside the foreclosure sales when an otherwise qualified Virginia corporation was named and acted as trustee.

Despite the appointment of Melmet as a substitute trustee, the Brown and Butler foreclosure sales were carried out in accordance with Virginia law. Colchester, a qualified trustee, conducted the foreclosure sales, executed the deeds, signed and filed the accountings, and carried out all the other necessary foreclosure sales activities. Melmet's role, on the other hand, was limited to assisting Colchester in completing ministerial acts. Although Melmet signed the original reports of sales, Colchester corrected any error by signing and submitting amended reports to the Commissioner. Moreover, no party suffered an inequity and a duly qualified Virginia substitute trustee performed all operative acts.[3] Therefore, the Court holds that, under the facts of this case, the mere fact that an unqualified corporation was appointed substitute trustee together with a qualified corporation does not render the Brown and Butler foreclosure sales invalid.

The two causes shall be returned to the Commissioner for completion of his audit and examination in accordance with the holding of this Court.

---

[3] No party has challenged the validity of the Brown and Butler foreclosure sales completed in 2002.