# CIRCUIT COURT OF FAIRFAX COUNTY

In re Estate of Eva Clark

> FI 2006-936 & CL 2006-6761

In re Estate of Edward Cynar

> FI 2007-2070 & CL 2007-14878

In re Estate of Jeanne Drakulich

> FI 2004-73324 & CL 2011-12329

In re Estate of Frances Gambaro

> FI 2009-1400 & CL 2009-11004

In re Estate of Arcadius Hakim

> FI 2006-1005 & CL 2006-6463

In re Estate of Wallace C. Love

> FI 2007-1152 & CL 2007-8950

In re Estate of Herta Schofield

> FI 2009-407 & CL 2009-1667

> July 24, 2012

By Judge Leslie M. Alden

These matters came before the court upon the filing of the Reports of the Commissioner of Accounts, John H. Rust, Jr. ("Commissioner"), the Exceptions to the Reports of the Commissioner of Accounts filed by Needham, Mitnick & Pollack, P.L.C. ("NMP"), and the Consolidated Report and Recommendation of the Guardian *ad Litem*, Aaron Book, Esq. (GAL). In making this ruling, the Court has considered *de novo* all of the written briefs, pleadings, post-trial brief, GAL Report, submission of billing records, the evidence presented at both trials, and the relevant case law.

In each of these cases, except for the Love case, NMP was appointed as both the Guardian and Conservator for the ward. In the Love case, NMP was appointed the administrator of the estate. The Commissioner's findings in his various reports involve the fees charged by NMP in their respective fiduciary roles as Guardian, Conservator, or Administrator.

### Principles Applicable to All Cases

A Conservator is responsible for managing the estate and financial affairs of a ward. Va. Code § 37.2-1000. The duties of the Conservator are found generally in Va. Code §§ 37.2-1022, 37.2-1023, and 37.2-1024. At the trial, expert testimony established that the role of the Conservator is to marshal and dispose of the assets and liabilities of the ward. At times, the tasks performed by the Conservator may implicate legal knowledge and skill such as, for instance, preparing deeds, estate planning, or taking legal action to secure property or to evict tenants. While the Commissioner has a Standard Schedule of Fees for Conservators, the Schedule does not preclude the Commissioner from approving a claim for a greater fee depending on the actual services performed in a particular case. Furthermore, the Commissioner does permit fees in excess of the scheduled amount when it appears that the facts and circumstances of the case warrant such a deviation from the guideline amount.

A Guardian makes decisions regarding the day-to-day affairs of the ward, including support, health, care, safety, rehabilitation, and residence. Va. Code § 37.2-1000. The duties of a Guardian are set out generally in Va. Code §§ 37.2-1020 and 37.2-1021. The Court appreciates that the role

of a Guardian is often demanding and includes difficult decisions that may involve safety or life or death determinations. Although some of the decisions made by a Guardian may implicate legal knowledge or reasoning, such as HIPPA or Medicaid eligibility, the vast majority of the work of the Guardian, while perhaps frustrating and inconvenient, is work that does not require any particular legal or professional skill and is work that is done every day by people who do not have legal training. The law does not require that an attorney perform as Guardian, and indeed, the role is usually filled by a relative or friend. Va. Code § 37.2-1015 also permits the Court to commit the estate of the ward to the Sheriff so that the Sheriff will serve as the fiduciary should no other fiduciary be found. When no other Guardian or Conservator can be located, the Court may appoint a local or regional program authorized by the Department of Aging to act as the fiduciary.

In these cases, the Guardian appointed was NMP, a law firm. The evidence at trial established that attorneys at the firm preferred to have the firm named, rather than an individual attorney, so that the fiduciary duties could be shared among the firm members.

NMP takes the position that it is permitted to perform all of the Guardian/Conservator tasks by utilizing its staff and charging the ward rates according to NMP's schedule of rates for legal services. NMP argues that an Order was entered in each of these cases that permits the firm to bill its rates for legal services and that the Commissioner does not have the authority to look beyond the Court Order to question the rates charged by the firm. In the Love case, NMP asserts that a retainer agreement with one of the heirs permitted the firm to charge its usual professional rates in the administration of the Love estate. The Court concludes that this retainer agreement did not bind the other heir and did not, on its terms, bind the estate. Thus, the analysis in the Love matter also requires the Court to determine the reasonableness of the rates charged. In other words, the question in these cases is not whether NMP charged rates in accordance with its legal fee schedule; the question is whether the fees charged by NMP are reasonable for the tasks or services performed.

Section 26-30 of the Virginia Code provides for the Commissioner to allow reasonable compensation for the fiduciary's services. If the fiduciary provides legal services, the fiduciary must charge a reasonable legal fee. When a fiduciary acts as both a Guardian and a Conservator and provides legal services to a ward, an obvious conflict of interest may be present. In order to calculate a reasonable compensation for each service, a fiduciary must separate its billing for services provided in each capacity and be prepared to explain to the Commissioner or to the Court which services were provided in each capacity, and the amount of time spent on each task. When a fiduciary provides non-legal services, the fiduciary must charge a reasonable fee for those services. A test for the reasonableness of attorney's fees is set out in *Chawla v. Burgerbusters*, 255 Va. 616, 499 S.E.2d 829

(1998). Although *Chawla* is a case involving attorney's fees, the standard set out may be used in determining reasonableness of Guardian or Conservator fees as well.

As set forth in *Chawla,* in determining the reasonableness of fees, the fact finder may consider the following factors:

(1) the time and effort expended by the attorney (fiduciary);

(2) the nature of the services rendered;

(3) the complexity of the services;

(4) the value of the services to the client (ward);

(5) the results obtained;

(6) whether the fees incurred were consistent with those generally charged for similar services; and

(7) whether the services were necessary and appropriate.

Upon remand, the Commissioner may consider the suggestions set out in the Third National Guardianship Summit Release Standards & Recommendations, NMP Exhibit # 5, introduced at trial.

After considering all of the evidence in these cases and the Report of the GAL, with the exception of a few specific tasks discussed below, the Court concludes that the amount of time spent by NMP in completing the tasks was reasonable and that the tasks were necessary, appropriate, and of value to the wards. However, the issue is really whether NMP's rates charged for these services were reasonable and consistent with those generally charged for similar services. The Court concludes that fees charged at legal rates for non-legal Guardian services are not reasonable, despite the time consuming nature of the tasks.

Much of the work of a Guardian, while important and critical, simply does not require legal skill or expertise. Even if it is proper for NMP to use its own staff to complete this work, it must charge fees commensurate with the skill level of the service. The Order in the Drakulich case permits NMP to use its staff to provide services to the ward. The Order cannot be interpreted, however, to permit NMP to charge legal rates for its staff that are not reasonable for non-legal tasks. The fact that NMP charged the rates for the lowest member of its legal staff to complete the non-legal tasks does not, in itself, make the rates reasonable. While it is reasonable for a Guardian to hire an attorney to help advise the Guardian as to the proper, legal course of action, and such decisions require legal expertise and would qualify as legal work, the attorney Guardian is permitted to charge a reasonable rate for legal services. Beyond this type of work involving legal skill, the reasonable rate that the Guardian may charge is the rate commensurate with the rate being charged in the marketplace for similar skills or tasks.

NMP argues that its rates are comparable to other law firms whose members act in a fiduciary capacity, but this is a relevant comparison only when determining reasonableness of legal fees. The rates charged for non-

legal tasks need to be compared to those of other service providers, outside of the legal profession, who perform the same non-legal tasks. For example, the trial expert, Ms. Ball, testified that she employed a retired teacher who performed personal care services for wards at the rate of $25 per hour. This testimony was quite persuasive and much more compelling than the testimony of Ms. Pollack, who said the firm billed personal care work at legal assistant rates of between $85 and $125 per hour.

NMP argues that there will be a chilling effect if Conservators are permitted to receive only the guideline amount of fees according to the Commissioner's schedule of fees. Although the Commissioner is guided by the Schedule of fees, his office will approve amounts in excess of the guidelines when circumstances warrant an increase. In fact, this was done in some of the cases in dispute here. With respect to reasonable fees allowed for Guardian services, the Court is not persuaded by the argument that attorneys will not agree to serve as a fiduciary unless they can charge legal rates for performance of non-legal services.

Next, NMP argued that the Commissioner lacks an understanding of the importance of the role of the Guardian when determining the proper amount of compensation. The Commissioner is charged with the responsibility of determining the reasonableness of the fees submitted by a fiduciary and has a duty to prudently approve expenditures. It appears from the Reports that the Commissioner has determined that, when performing non-legal work, the fees charged should be consistent with the fees charged in the marketplace for similar services, and not those fees charged for the various professionals in a law office. This is not evidence that the Commissioner fails to appreciate the value of the work of a Guardian.

In addition, NMP argues that the Commissioner does not have the authority to reopen previously approved Accountings. NMP argues that a fiduciary should be able to rely upon the decision of the Commissioner once the Accounting has been approved and that he cannot "claw back" the fees already paid out. The Court disagrees. The Commissioner is a quasi-judicial officer who is not estopped from raising legitimate questions about the propriety of an Accounting that have not been previously raised. This is especially true while the matter remains pending before the Commissioner. *See In re Trustee's Sale of the Property of Willie Brown*, 67 Va. Cir. 204 (City of Norfolk 2005). The Court concludes that the Commissioner's approval of an accounting is not tantamount to a final order under Rule 1:1 of the Rules of the Virginia Supreme Court.

NMP argues that the Commissioner's reports contained errors in relation to the amounts billed for certain tasks because his office looked at the billing records and where there was "block-billing," attributed the entire amount billed to the task, even where there were different tasks included in the total amount. For instance, NMP states that the fees charged for the sale of real estate in the Love case, the fees generated for the sale of personality in the

Drakulich case, and fees charged for the sale of the car in the Schofield case were actually much lower than the Commissioner calculated them to be in his Reports. However, the burden rests with the fiduciary to show the actual amount billed for each separate task, especially where the task is included with a multitude of other tasks in one billing entry. If the fiduciary does not meet this burden, then the fiduciary cannot be compensated for the task.

Accordingly, for all of the reasons stated, The Exceptions to the Commissioner's Report in the case are overruled, except that the matters are remanded back to the Commissioner of Accounts so that he may determine the proper hourly rate to be charged for the various non-legal tasks performed by NMP. It is further ordered that the Motion for Attorney's Fees filed by NMP is hereby denied.

## Order

These matters came before the Court on the Reports of the Commissioner of Accounts filed by the Commissioner of Accounts, John H. Rust, Jr., on the Exceptions to the Reports of the Commissioner of Accounts filed by Needham, Mitnick & Pollack, P.L.C., on the Consolidated Report and Recommendations of the Guardian *ad Litem* filed by Aaron S. Book, on the briefs, pleadings and submission of billing records, and on the evidence presented at trial. It is adjudged, ordered, and decreed that, for the reasons set forth in the Court's letter opinion entered on this date and incorporated herein, the Exceptions to the Commissioner's Reports are overruled, except that these matters are remanded to the Commissioner of Accounts to determine the proper hourly rate to be charged for the various non-legal tasks performed by Needham, Mitnick & Pollack, P.L.C.