COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges O'Brien and Lorish
Argued at Lexington, Virginia


ERNEST L. PARRISH

                                                          OPINION BY
v.        Record No. 1342-22-3                    JUDGE LISA M. LORISH
                                                          OCTOBER 3, 2023
QUINTON B. CALLAHAN, ET AL.


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Paul A. Dryer, Judge

Henry W. McLaughlin (Law Office of Henry McLaughlin, P.C., on
briefs), for appellant.

Quinton B. Callahan (Kevin M. Wheeler; Katherine M. Mann; Clark
& Bradshaw, P.C., on brief), for appellees.

Ernest L. Parrish argues that the foreclosure sale of his home should be voided because

he did not receive the notice that Code § 55.1-321 requires for a residential homeowner, or in the

alternative, that the lack of adequate notice (30 days pre-sale instead of 60 days) was grounds for

equitable rescission. We affirm the circuit court's decision to sustain the demurrer because the

statute Parrish relies on expressly precludes the type of relief he seeks (voiding the sale). And

Parrish failed to plead grounds for equitable relief because he did not allege that he could have

cured the default on his loan and avoided foreclosure had he received 30 more days of notice.

                                        BACKGROUND

Because Parrish appeals from a sustained demurrer, "we accept as true all factual

allegations in the complaint 'made with "sufficient definiteness to enable the court to find the

existence of a legal basis for its judgment."'" *Patterson v. City of Danville*, 301 Va. 181, 197

(2022) (quoting *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 514 (2014)).

Parrish owned a home in Augusta County beginning in 1994. In 2014, he obtained a credit advance—secured by a deed of trust on the home—with First and Citizens Bank (now Summit Community Bank ("Summit")), evidenced by a promissory note. The deed of trust incorporated by reference portions of the Virginia Code governing deeds of trust and notices required before a property can be foreclosed on and sold.

In 2021, after Parrish fell into arrears, Summit claimed status as holder of the note and appointed Quinton and Mark Callahan ("the trustees," collectively) as substitute trustees on the deed of trust. Quinton then arranged a foreclosure sale by auction. On February 8, 2022, the trustees mailed Parrish a copy of the notice of the upcoming sale to be held (30 days later) on March 10, 2022. At the March 10 foreclosure sale, Doe Investors[1] made the highest bid.

Parrish filed a complaint in the Circuit Court of Augusta County requesting either an injunction against the trustees that would force them to rescind the foreclosure sale, or an order of rescission against the trustees and Doe Investors ("the appellees," collectively). He argued that the foreclosure sale should be rescinded for the trustees' failure to satisfy the notice requirements of Code §§ 55.1-320(10) and 55.1-321.

The appellees demurred. They argued that any failure to provide adequate notice is not grounds for rescission under Code § 55.1-321(C). They also argued the remedy of equitable rescission is limited to cases involving fraud, collusion, or a sale price so low as to shock the conscience and that Parrish had failed to plead any of these grounds for relief.

The circuit court sustained the demurrer, finding that the notice Parrish received was valid and that even if it were not, the saving clause of Code § 55.1-321(C) prevented the sale from being invalidated. The court also held that rescission was not a proper remedy when Parrish made no claim of fraud, collusion, or a sale price so low as to shock the conscience.

---

[1] Doe Investors is a pseudonym for the purchaser.

The court gave Parrish 21 days to file an amended complaint. Parrish did so, adding more factual allegations. He alleged that while he had received other foreclosure notices "[a]fter July 1, 2021 and before February 8, 2022," none was received more than 60 days before the foreclosure sale listed in the notice.[2] Parrish also alleged that if he had received a proper 60-day notice, "he would more than likely have found a way to stop the foreclosure, as a last resort by a bankruptcy." He claimed that he had suffered damage from the lack of notice, including "lost equity in the home." Parrish also claimed, "on information and belief," that the Doe Investors' bid was "for less than the value of the home," but not "so low as to shock the conscience of the court." Parrish again sought rescission of the sale. Alternatively, he claimed rescission was not required because the "disputed foreclosure auction was conditional and not final," so the court could and should "enjoin closing on the disputed foreclosure auction" or require the trustees to "set aside the disputed foreclosure auction."

The appellees demurred for the same reasons as before. In a final order, the court sustained the demurrer and fully dismissed the amended complaint with prejudice. In addition to the reasons cited before, the court rejected Parrish's argument that the property sale was not final. The court also found that Parrish had not alleged facts to support a loss of equity in the property or alleged damages with sufficient specificity.[3]

---

[2] The appellees had alleged in their demurrer that they provided repeated notices concerning previously scheduled foreclosure sales, but those sales were ultimately delayed due to Parrish's multiple bankruptcy filings. While that allegation is not inconsistent with Parrish's statements in the amended complaint that "[a]fter July 1, 2021 and before February 8, 2022, the Callahans sent foreclosure notices to Parrish, none of them for 60 days," and that he had filed for bankruptcy at least once, on appeal we are limited to considering only those factual allegations in the complaint. *See Patterson*, 301 Va. at 197.

[3] The court denied Parrish's motion for leave to file a second amended complaint, which sought to add a claim for breach of contract. Parrish has not assigned error to that decision.

ANALYSIS

After Parrish failed to make mortgage payments, the trustees instituted foreclosure proceedings for Summit, the lender. Following the foreclosure sale, Parrish filed his complaint, asking the circuit court to set aside the sale, and the appellees demurred, arguing that Parrish failed to state any basis for rescission of the completed sale. Parrish now argues that the court erred in sustaining the demurrer to his original and amended complaints because he pleaded sufficient facts to support both statutory and equitable rescission.

A demurrer is a form of pleading that "tests the legal sufficiency of the facts properly alleged [in a complaint], and the inferences fairly drawn therefrom." *Terry v. Irish Fleet, Inc.*, 296 Va. 129, 135 (2018). A demurrer is properly sustained when the "complaint fail[s] to state a claim for which relief could be granted." *Id.* at 141. "On appeal, we review a circuit court's decision sustaining a demurrer de novo." *Ayers v. Brooke Rd., LLC*, 300 Va. 315, 321 (2021). In addition to accepting all sufficiently definite factual allegations in the complaint as true, we "accept as true unstated inferences" in the complaint "to the extent that they are *reasonable*," but "give them no weight to the extent that they are *unreasonable*." *Patterson*, 301 Va. at 197 (quoting *Doe ex rel. Doe v. Baker*, 299 Va. 628, 641 (2021)). And we "do not accept the veracity of conclusions of law camouflaged as factual allegations or inferences." *Id.* (quoting *Doe*, 299 Va. at 641).

First, we address Parrish's various claims under the statute. Central to each argument is Parrish's claim that he received notice on February 8, 2022, for a foreclosure sale to be held only 30 days later, on March 10, 2022. While he admits he received some earlier notice dated after July 1, 2021, he pleaded that this notice was also sent fewer than 60 days before an earlier listed

- 4 -

foreclosure date. Parrish assigns four related errors that require us to interpret Code

§§ 55.1-320(10) and -321.[4] Then, we turn to his equitable rescission argument.

> I. A defect in notice is not grounds for rescission under Code § 55.1-321(C), so the circuit court did not err in concluding Parrish failed to state a claim for statutory rescission.

When a homeowner in Virginia purchases a property using a mortgage, the owner (also

the borrower) retains the title of the property, and the mortgage lender takes a security interest in

the property that leaves the right of possession with the borrower unless the lender forecloses on

the property. *See High Knob Assocs. v. Douglas*, 249 Va. 478, 484 n.4 (1995). A deed of trust is

a mortgage instrument that secures the debt with the real property as collateral. Doug

Rendleman, *Foreclosure of a Deed of Trust in Virginia*, 51 U. Rich. L. Rev. 147, 157 (2016).

Using a deed of trust, the borrower conveys a security interest in the property to a trustee (a

disinterested third party) through a lien. *Id.* That trustee is then the fiduciary-agent of both the

lender, who is the beneficiary of the trust, and the borrower. *Id.* If the borrower pays the debt to

the lender, the lien on the property is released and the property is no longer encumbered; but if

the borrower fails to pay, the lender may ask the trustee to foreclose upon and sell the property.

*Id.*

Many statutory requirements kick in before a trustee may foreclose on and sell a

property. Relevant here, Code § 55.1-321 requires a trustee to give notice to the owner/borrower

before proceeding with a sale by foreclosure of a deed of trust. In addition to notice by

newspaper advertisement, addressed in Code § 55.1-322, a trustee must give, "by personal

---

[4] Parrish separately assigned error to the court's sustaining the demurrer because (1) he never received a "60 day notice for foreclosure" as required by Code § 55.1-321, (2) Code § 55.1-320(10) "precluded the Callahans from conducting the foreclosure auction because they were unable to provide potential bidders with an affidavit of proper notice," (3) Code § 55.1-321(A) only "exempted the Callahans from liability for an unintentional failure to send a proper notice for foreclosure," and (4) the foreclosure sale was conditional, not final, so Code § 55.1-321(C) does not apply.

delivery or by mail to . . . the present owner of the property to be sold," a "written notice of the time, date, and place of any proposed sale."[5]  Code § 55.1-321(A).  "Mailing of a copy of the advertisement or a notice containing the same information to the owner by certified or registered mail no less than 60 days prior to such sale . . . shall be a sufficient compliance with the requirement of notice."  *Id.*  The statute specifies that "[t]he foreclosure sale cannot go forward unless the trustee has proof that the notice has been sent."  *Id.*

The General Assembly amended the notice provisions in Code § 55.1-321, effective July 1, 2021.  *See* 2021 Va. Acts Spec. Sess. I, chs. 91-92.  Under the prior version of the statute, mailing a written notice of foreclosure "14 days prior to such sale" was "sufficient compliance with the requirement of notice" for all types of property.  The current version of the statute now requires 60 days of notice for "owner-occupied residential real estate," and 14 days for all other types of property.  The language stating that "[t]he foreclosure sale cannot go forward unless the trustee has proof that the notice has been sent" was also added and became effective July 1, 2021.

While the General Assembly modified the amount of notice a homeowner such as Parrish must receive under the statute, no change was made to subsection (C), which has stated since its enactment in 1979[6]: "Failure to comply with the requirements of notice contained in this section shall not affect the validity of the sale, and a purchaser for value at such sale shall be under no duty to ascertain whether such notice was validly given."  Code § 55.1-321(C).  The General Assembly also left untouched the portion of the statute which provides that if a foreclosure sale

---

[5] The "notice shall include either (i) the instrument number or deed book and page numbers of the instrument of appointment filed pursuant to § 55.1-320, or (ii) a copy of the executed and notarized appointment of substitute trustee."  Code § 55.1-321(A).

[6] Minor stylistic changes were made in 1993, resulting in the current language.

is postponed, "no new or additional notice is required to be given pursuant to this section." Code § 55.1-321(D).

The amended complaint alleges that Parrish never received a notice more than 60 days before the scheduled foreclosure sale listed in that notice. We assume, without deciding, that the statute's exception to the notice requirement for postponed sales does not apply when the homeowner never received a notice of foreclosure 60 days before any given previously scheduled sale, even if the foreclosure auction ultimately takes place more than 60 days after a homeowner received a previous notice. Under that assumption, Parrish pleaded that the notices he received did not comply with Code § 55.1-321. But this "[f]ailure to comply with the requirements of notice" does not entitle Parrish to the remedy he seeks—rescinding the sale. Code § 55.1-321(C). To the contrary, the statute expressly states that such a failure "shall not affect the validity of the sale." *Id.*

"When the language of a statute is unambiguous, we are bound by the plain meaning of the words used." *Antisdel v. Ashby*, 279 Va. 42, 48 (2010). We "'presume that the legislature chose, with care, the specific words of the statute' and that '[t]he act of choosing carefully some words necessarily implies others are omitted with equal care.'" *Va. Elec. & Power Co. v. State Corp. Comm'n*, 300 Va. 153, 163 (2021) (alteration in original) (quoting *Wal-Mart Stores East, LP v. State Corp. Comm'n*, 299 Va. 57, 70 (2020)). The language of Code § 55.1-321(C) is unambiguous.[7]

---

[7] The statute's separate provision, Code § 55.1-321(A), noting that the "inadvertent failure to give notice as required by this subsection shall not impose liability on either the trustee or the secured party" does not create any ambiguity, as Parrish suggests for the first time on appeal. Neither inadvertent nor purposeful failures of personal notice lead to a statutory rescission remedy given the unambiguous language of Code § 55.1-321(C); instead, a homeowner may be able to seek other remedies for a purposeful violation, as discussed in note 14 below.

What is more, the statutory scheme governing deeds of trust distinguishes between remedies for defects in personal notice of a foreclosure sale and remedies for defects in notice by newspaper advertisement. The latter is grounds to "render a sale of the property voidable by the court." Code § 55.1-322(E). The General Assembly chose to provide a remedy of rescission in one instance and not the other,[8] and we must apply the "manifest intention of the legislature, clearly disclosed by its language." *Anderson v. Commonwealth*, 182 Va. 560, 566 (1944). And the General Assembly retained this unambiguous language despite making other amendments to the statute. *See Wright v. Commonwealth*, 53 Va. App. 266, 280 (finding that "the legislature understood how to require something more than constructive possession when it enacted [one subsection] proscribing possession 'on or about [the] person,' but that it opted not to use such language in [another subsection], either when it originally created the present subsection . . . or when it amended the statute on four subsequent occasions"), *aff'd*, 278 Va. 754 (2009).

The failure to provide notice by mail more than 60 days before a scheduled foreclosure sale, as required by Code § 55.1-321(A), is a "[f]ailure to comply with the requirements of

---

[8] Indeed, our Supreme Court has already reached a similar conclusion regarding the distinction between the language of Code § 55.1-321 and Code § 55.1-322. In *Deep v. Rose*, 234 Va. 631 (1988), the Supreme Court found Code § 55.1-322 (then Code § 55-59.2) allowed a sale to be voided for failure to provide adequate notice by newspaper. At the time, Code § 55-59.2 was silent as to remedy, but Code § 55-59.1 (the predecessor to Code § 55.1-321) said, as it still does, that "[f]ailure to comply with the requirements of notice contained in this section shall not affect the validity of the sale." The Court concluded that the General Assembly deliberately chose to preclude rescission as a remedy for personal notice requirements in § 55-59.1, but left the door open for rescission as a remedy for the advertising requirement in § 55-59.2 (which the General Assembly later codified as a remedy, *see* 1992 Va. Acts ch. 550). *Deep*, 234 Va. at 637-38. As for why the General Assembly treated the two requirements differently, the Court suggested that "[i]t might be difficult for a purchaser at a foreclosure sale to ascertain whether 14 days personal notice had been given to the debtor as required" whereas "a purchaser who has been attracted to a sale by a series of newspaper advertisements has ready means of ascertaining whether the sale falls within the prescribed time period after publication," as required by the statute; therefore, "the legislature, undoubtedly for that reason, relieved the purchaser of the consequences of the trustee's failure" with respect to personal notice. *Id.*

notice" that does not impact the validity of a completed sale. Code § 55.1-321(C). Thus, Parrish has failed to state a claim for statutory rescission.

Parrish then repackages his same argument in an effort to state a claim under Code § 55.1-320, which provides default rules for interpreting a deed of trust. One such rule is that for "owner-occupied residential real estate," the trustee "shall not sell the property secured by the deed of trust without receiving an affidavit signed by the party that provided the notice required by § 55.1-321 confirming the notice was sent to the owner, with a copy of such notice attached to the affidavit." Code § 55.1-320(10). And "[p]rior to commencing a foreclosure sale with respect to such real estate, the trustee shall provide copies of such affidavit and notice, with any personal financial information redacted, to each potential bidder." *Id.* Thus, Parrish argues that because the underlying notice did not comply with Code § 55.1-321, the trustee did not—and could not—comply with Code § 55.1-320(10), and this failure is separate grounds for rescission.

This argument falls short. Under Parrish's theory, every violation of the notice requirements of Code § 55.1-321(A) would also violate Code § 55.1-320(10) because the trustee could not "receive an affidavit" confirming that the § 55.1-321(A) notice requirements had been complied with if those requirements were not in fact met. But Code § 55.1-320 lacks express language stating that a failure to comply with its provisions is grounds to rescind a foreclosure sale. *Cf.* Code § 55.1-322(E) (failure to comply with notice by advertisement "render[s] a sale of the property voidable by the court"). And reading Code § 55.1-320(10) to include an implied statutory rescission remedy would undermine the General Assembly's decision in Code § 55.1-321(C) to exclude rescission as a remedy for violations of the personal notice requirements. "[P]roper construction seeks to harmonize the provisions of a statute both internally and in relation to other statutes." *Atl. Orthopaedic Specialists v. City of Portsmouth*, 73 Va. App. 157, 165 (2021) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 518

- 9 -

(2020)).  We therefore decline to read the legislature's silence as to remedy in Code § 55.1-320 as opening a back door to rescission for defective personal notice, circumventing Code § 55.1-321(C)'s explicit preclusion of that very remedy.[9]

Finally, Parrish argues in the alternative that Code § 55.1-321(C)'s elimination of rescission as a remedy does not apply because the statute governs only completed foreclosure sales, but here the "foreclosure process" was merely "conditional" according to the terms of the foreclosure auction memorandum of sale.  In his amended complaint, Parrish pointed to the newspaper advertisement language that the sale "may be subject to . . . restrictions and reservations contained in duly recorded deeds . . . and other instruments constituting constructive notice in the chain of title which have not . . . become ineffective."  Parrish also alleged that— while he did not have a copy of the memorandum of sale—"on information and belief . . . the memorandum of sale for the disputed foreclosure auction gave the substitute Trustees the authority to cancel the disputed foreclosure, with return of deposit to the high bidder(s)."

Applying long-standing law to the facts Parrish has pleaded, the foreclosure sale was final, not conditional.[10]  "Upon foreclosure under a Virginia deed of trust, 'the contract of sale is consummated when the auctioneer cries the property out to the person making the highest and last bid.'" *Ramos v. Wells Fargo Bank, NA*, 289 Va. 321, 324 (2015) (cleaned up) (quoting *Feldman v. Rucker*, 201 Va. 11, 21 (1959)).  "The only power remaining in the trustees, so far as

---

[9] Parrish points to the language that the trustee "shall not sell the property" without the requisite affidavit.  Code § 55.1-320(10).  But Code § 55.1-321(A) similarly provides that "[t]he foreclosure sale cannot go forward unless the trustee has proof that the notice has been sent," and Code § 55.1-321(C) still takes rescission off the table.  That is not to say the statutes grant rights without remedies.  Their language provides grounds for relief before the property is sold.  And other remedies may be available after sale, as further discussed in note 14 below.

[10] In reaching this conclusion we accept as true the factual allegations concerning the language in the newspaper advertisement and the language that was "likely" included in the memorandum of sale.  Parrish's contention that the sale was conditional and not final, on the other hand, is a conclusion of law that we do not accept as true.  *Patterson*, 301 Va. at 197.

the purchaser is concerned, is to collect the purchase money and execute a proper deed conveying such property and title as had been conveyed to the purchaser." *Id.* (cleaned up) (quoting *Feldman*, 201 Va. at 21). Parrish cites no authority for the proposition that because the trustees may have authority to set aside the sale, the sale was not final. And even if the trustees could still rescind the sale for purported notice violations, neither the statutes nor our precedent requires them to do so, for the reasons discussed above.

In short, the circuit court did not err by sustaining the demurrer as to Parrish's claims for rescission under Code §§ 55.1-320(10) and 55.1-321 and finding that the foreclosure sale was final, not conditional.

    II. The court correctly held that Parrish did not plead sufficient grounds for equitable rescission.

Parrish also argues that he pleaded sufficient grounds for equitable rescission.[11] "Equitable rescission is a 'remedy which calls for the highest and most drastic exercise of the power of a court of chancery—to annul and set at naught the solemn contracts of parties.'" *Young-Allen v. Bank of Am. N.A.*, 298 Va. 462, 468 (2020) (quoting *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 115 (2008)). "Generally, a court will not rescind a completed foreclosure sale." *Id.* "Like any claim, a claim seeking the equitable rescission of a contract must be adequately pled in a valid pleading." *Id.* Our Supreme Court has explained:

> [O]ne of the first principles with respect to the rescission of a
> contract is that . . . *there must be first a sufficient averment of facts*

---

[11] Generously construed, three of Parrish's assignments of error argue that the court erred by not finding he sufficiently pleaded a basis for equitable relief. First, Parrish assigns error to the court's conclusion that "rescission was not a proper remedy where there was no claim of fraud, collusion, or a sale price so low as to shock the conscience of the court" because these grounds are not an exhaustive list of qualifying bases in equity. Second, Parrish argues that he "lost equity," that there was a "modest amount of equity in the home," that the "high bid at the foreclosure auction was for 'far less than the value of the home,'" and that pleading these things was sufficient to state a claim for equitable rescission. Third, he asserts that pleading that he would have "prevented foreclosure by a Chapter 13 bankruptcy if necessary" was sufficient to plead that, with proper notice, he would have prevented the foreclosure.

> *showing the plaintiff [is] entitled in equity to the relief which he seeks*, and satisfactory proof of these facts, to justify the interposition of the court; and in addition to all this the court must be able substantially to restore the parties to the position which they occupied before they entered into the contract.

*Id.* (alterations in original) (quoting *Schmidt*, 276 Va. at 115).

Virginia courts have recognized several "potential exceptions" to the general rule that rescission is disfavored. *Id.* A foreclosure sale may be rescinded "in cases 'involving fraud, collusion with the purchaser, and a foreclosure sale price of such gross inadequacy that it shocks the conscience of the court.'" *Id.* (quoting *Parrish v. Fed. Nat'l Mortg. Ass'n*, 292 Va. 44, 52 (2016)).

An equitable rescission claim may also be based on a breach of contract theory if the "underlying breach of contract is 'substantial' or 'material.'" *Id.* at 469 (first quoting *Bolling v. King Coal Theatres, Inc.*, 185 Va. 991, 996 (1947); and then quoting 26 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 68.2, at 40-44 (4th ed. 2019)). "The terms 'substantial' and 'material' imply that the breach of contract underlying a rescission claim has caused some type of injury or harm to the non-breaching party." *Id.* at 469-70. A "general allegation that the trustee breached the deed of trust is not sufficient." *Parrish*, 292 Va. at 53 n.5. In other words, Virginia courts have "never held that equitable rescission is available in cases where a plaintiff fails to plead that he or she incurred any damages or suffered any harm *caused* by an alleged breach of a deed of trust." *Young-Allen*, 298 Va. at 469 (emphasis added).

In *Young-Allen*, the plaintiff's complaint "failed to allege facts establishing that the breach of the deed of trust caused her any harm." *Id.* at 470. While the complaint alleged the lender failed to send notices as required by the deed of trust, it did "not allege that [the plaintiff] had the ability to cure her default." *Id.* "Without such an allegation, the complaint did not establish that the alleged breach caused any harm." *Id.* If the plaintiff could not cure the default,

the "failure to send the notices at issue regarding the right to cure did not cause [the plaintiff] to sustain an injury or incur any damages." *Id.*

For the same reason, Parrish failed to plead a cause of action that could support an equitable rescission claim. He pleaded that the trustees' failure to provide sufficient notice as required by the deed of trust[12] caused him harm, including "lost equity"[13] in the home, because with adequate notice (60 days instead of 30) he "would more than likely have found a way to stop the foreclosure, as a last resort by [Chapter 13] bankruptcy." Because Parrish had already filed an earlier bankruptcy, he pleaded that "a second bankruptcy would have resulted in an automatic stay for 30 days during which he could have moved for an extension of such a stay." Yet Parrish ultimately only pleaded that additional notice would have given him more time to delay the sale, not that more time would have enabled him to come up with additional funds to pay off his debt and avoid the foreclosure. As in *Young-Allen*, Parrish failed to plead that he "had the ability to cure [his] default," so his complaint lacks a sufficient causal link between the alleged lack of notice and his injury. *See* 298 Va. at 470. Without a link between the alleged

---

[12] The deed of trust incorporated the statutory notice provisions.

[13] Parrish assigns as a separate error the circuit court's holding—that "Parrish had not sufficiently pleaded loss of equity"—on the basis that

> (a) the amended complaint pled that Parrish had lost equity; (b) in a bankruptcy in which Parrish was the debtor, a creditor had filed a proof of claim "indicating there was a modest amount of equity in the home"; and (c) the amended complaint pleaded that the high bid was for "far less than the value of the home."

His entire argument on this assignment of error merely restates the assignment of error. Rule 5A:20(e) requires that the opening brief include "the argument (including principles of law and authorities) relating to each assignment of error." "[I]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (quoting *Sneed v. Bd. of Prof. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)). Without more, this assignment of error is waived.

wrong and the proposed remedy,[14] we must affirm the circuit court's decision to sustain the

demurrer. *See id.* at 469 ("Remedies . . . do not exist in the abstract; rather, they flow from and

are the consequence of some wrong." (alteration in original) (quoting *Devine v. Buki*, 289 Va.

184, 187 (2015))).[15]

III. Parrish's remaining argument that the court erred in striking information from the statement in lieu of a transcript is unavailing.

Finally,[16] Parrish argues that the circuit court erred in overruling part of a proposed

statement in lieu of a transcript he submitted that would have included the following:

> Quinton B. Callahan, for himself and as counsel for Mark B.
> Callahan, argued against the motion for leave to amend stating, in
> part, that Parrish could file a separate suit against the substitute
> trustees, and in part that Parrish had had an opportunity to include
> such a claim for damages in the amended complaint and had not
> done so.

---

[14] The remedies Parrish pleaded are not the only remedies for property owners foreclosed upon without proper notice. Contractual remedies may be available. *See Bayview Loan Servicing, LLC v. Simmons*, 275 Va. 114, 122 (2008) (affirming borrower's judgment for breach of contract against trustee on deed of trust); *Squire*, 287 Va. at 521 (overruling demurrer on breach of contract claim alleging damages for failure to comply with HUD regulation incorporated into deed of trust). The property owner may also sue for damages for breach of fiduciary duties because the trustee has fiduciary duties to the owner, the trustor of the deed of trust. *See Squire*, 287 Va. at 517-18 (overruling demurrer on breach of trust claim alleging foreclosure sale was carried out without satisfying the requirements in the HUD regulation). While Code § 55.1-321(A) prohibits liability for "either the trustee or the secured party" for the "inadvertent failure to give notice as required by this subsection," it provides no such protection for a purposeful failure to give notice. Here, Parrish sought leave to file a second amended complaint pleading damages for the alleged statutory violations. The court denied that motion, and Parrish does not challenge that decision on appeal.

[15] A recent unpublished decision from this Court likewise sustained a demurrer where the plaintiff simply pleaded that it could have cured the default if given proper notice, without providing any explanation of how the plaintiff would have done so. *Entrepreneur Dream Team v. Anchor Assets V, LLC*, No. 0546-22-1, slip op. at 19 (Va. Ct. App. Mar. 7, 2023).

[16] In the analysis above, we have already addressed Parrish's summary assignment of error to the court's sustaining the demurrer for the "reasons set forth in Error Numbers 1, 2, 3, 5, 6, and 7."

Instead, the appellee's version, which the judge signed off on, stated (with strikethrough showing what was deleted):

> Quinton B. Callahan, for himself and as counsel for Mark B. Callahan, argued against the motion for leave to amend stating~~, in part, that Parrish could file a separate suit against the substitute trustees, and in part~~ that Parrish had had an opportunity to include such a claim for damages in the amended complaint and had not done so.

Rule 5A:8 requires a party to timely object to a written statement in lieu of a transcript on the ground that it is "erroneous or incomplete." Parrish does not identify any place in the record where he objected to the action he complains of now on appeal. And even if Callahan made such a statement, the circuit court would not have been "bound by [a] concession[] of law by the parties." *Epps v. Commonwealth*, 47 Va. App. 687, 703 (2006) (en banc). In any event, Parrish fails to explain how the amended statement of facts is relevant to his arguments on appeal. Thus, to the extent this argument was preserved, we find any error was harmless as it does not affect any issue before us in this appeal.

## CONCLUSION

For the above reasons, we affirm the circuit court's decision.

*Affirmed*.